**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-2684

JING JING JIANG,

Petitioner,

v.

ALBERTO R. GONZÁLES,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Howard, Circuit Judge.

Wei Jia, for petitioner.
Lisa Wilson Edwards, with whom Anthony W. Norwood, Mark L.
Gross, Attorneys, United States Department of Justice, and Peter D.
Keisler, Assistant Attorney General, Civil Division, were on brief,
for respondent.

December 21, 2005

**TORRUELLA**, **Circuit Judge**.   Petitioner Jing Jing Jiang petitions us to review a decision of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ's") denial of her asylum application.[1]   We deny the petition for review and affirm the decision of the BIA.

## I.  Background

Jiang is a native and citizen of China who entered the United States at the Los Angeles International Airport on July 19, 2001, without a valid entry document.  She was sixteen years old at the time.  On July 30, 2001, the Immigration and Naturalization Service ("INS")[2] issued a Notice to Appear charging that Jiang was removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien not in possession of a valid immigration document.  On July 9, 2002,[3] Jiang admitted the allegations against her, conceded

---

[1]   The BIA also denied Jiang's application for withholding of removal.  While Jiang states in the concluding paragraph of her brief that she is eligible for withholding of removal, she has not addressed the issue in any other part of her brief.  We therefore deem the issue waived.  See Qin v. Ashcroft, 360 F.3d 302, 305 n.5 (1st Cir. 2004).

[2]   In March 2003, the relevant functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement ("BICE").  For simplicity, we refer to the agency throughout this opinion as the INS.

[3]   Jiang was originally ordered to appear before an IJ in San Pedro, California.  However, she filed two motions for a change of venue, both of which were granted.  In the first, she requested that her removal proceeding be moved to New York, New York, where

-2-

removability, and filed applications for asylum and withholding of removal. Jiang testified at a hearing before an IJ on February 4, 2003. We draw the following facts from this testimony and the documents Jiang presented in support of her applications.

Jiang's father owned a bookstore that he opened in 1997 in Wuhan Changle Township in China. Jiang worked in the bookstore soon after graduating from middle school in July 2000. In October 2000, Jiang's father began practicing Falun Gong,[4] which the Chinese government has classified as a cult and banned. Jiang's father also sold Falun Gong books in his bookstore. Jiang, her mother, and her sister do not practice Falun Gong.

In May 2001, Jiang's father went into hiding.[5] He was gone for four or five days before Jiang noticed his absence.

---

she was living with her uncle. In the second, she requested a change of venue to Boston, Massachusetts, which is where her hearing eventually took place.

[4] According to the U.S. Department of State, Falun Gong

blends aspects of Taoism, Buddhism, and the meditation techniques and physical exercises of qigong (a traditional Chinese exercise discipline) with the teachings of Falun Gong leader Li Hongzhi . . . . Despite the spiritual content of some of Li's teachings, Falun Gong does not consider itself a religion and has no clergy or places of worship.

2002 International Religious Freedom Report: China (U.S. Dep't of State, 2002).

[5] There is no indication in the record of what exactly prompted Jiang's father to go into hiding, although Jiang stated he went into hiding from the government because he practiced Falun Gong.

According to Jiang, her father was often gone from their home for days at a time while visiting friends or relatives, and she thus did not think it strange when she did not see him for a few days.

Around the same time, government officials came to the family bookstore while Jiang was working there. The officials were looking for Jiang's father and told Jiang that they knew her father practiced Falun Gong. Jiang told the officials that she did not know where her father was. After the officials repeated their questions a few times, they took Jiang with them. Jiang was taken to a very small room in a building that looked like a local police station. The room had a small window just above the bed. The next day, the officials came to the room and told Jiang to give them "the real answers."

The officials detained Jiang for around a week, during which time they gave her one meal per day. They never physically harmed her. On the last evening of her captivity there was a typhoon, during which the window above her bed shattered. Jiang was able to climb out the window and jump to the ground below. Although she did not know exactly where she was, Jiang walked until she found a telephone, which she used to call her mother. Jiang's mother sent a car to pick her up, and Jiang went into hiding. She stayed at an aunt's house for one evening, then stayed in a hotel for a week or two. Jiang's mother arranged her departure from

China to the United States. Jiang's mother and sister still live in China and have not reported any problems to Jiang.

The IJ denied Jiang's applications, finding that Jiang's testimony was not credible. First, the IJ found it odd that Jiang's father was missing for four or five days before Jiang noticed and wondered how Jiang was able to operate the bookstore without her father. Second, the IJ stated that "[i]t simply is not reasonable . . . that the police officers would question a then 16-year-old girl as to the whereabouts of her father when, if they truly wanted to know where her father was, they would have questioned [Jiang's] mother." Third, the IJ disbelieved Jiang's testimony that she was held in a small room for a week by the police because it did not make sense that the police would hold Jiang and not Jiang's mother. Fourth, the IJ disbelieved Jiang's testimony regarding her escape, stating that "[i]t would certainly seem to me that if she was being held somewhere in detention . . . that she would have been held in a cell in the police station and not just a small room with a window." Fifth, the IJ disbelieved Jiang's testimony regarding how she was able to contact her mother and how her mother was able to have a car pick her up. The IJ stated that "[o]ne would wonder where the respondent would have called from, and how her mother would have known where to send a taxi to." Finally, the IJ stated that, if Jiang had really escaped, then the police would have sent officers after her, and

"certainly . . . would have gone to the mother's home, and . . . very likely would have held the mother in detention.  All of these things did not happen."  The IJ also stated that Jiang was not a practitioner of Falun Gong and concluded that, at best, "she was not being persecuted because she was a Falun Gong practitioner, but rather abused by the police, who wanted to find her father."

Jiang appealed to the BIA, which adopted and affirmed the IJ's decision on November 16, 2004.  Jiang now contests the BIA's decision.

## II.  Discussion

In order to establish eligibility for asylum, an asylum applicant has the burden of establishing that she is a "refugee." 8 U.S.C. § 1158(b)(1)(B); 8 C.F.R. § 208.13(a).  "Refugee" means any person who is outside of her home country and "is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ."  8 U.S.C. § 1101(a)(42)(A).  An applicant may meet this burden by showing past persecution -- which creates a rebuttable presumption of a well-founded fear of future persecution, Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003) -- or a well-founded fear of future persecution on account of one of the five statutory grounds.  8 C.F.R. § 208.13(b)(1).

To establish past persecution, an applicant must provide "conclusive evidence" that she was targeted on any of the five grounds. Fesseha, 333 F.3d at 18. To show a well-founded fear of future persecution, "the asylum applicant's fear must be both genuine and objectively reasonable." Aguilar-Solís v. INS, 168 F.3d 565, 572 (1st Cir. 1999).

We review decisions of the BIA under the substantial evidence standard, Mihaylov v. Ashcroft, 379 F.3d 15, 17 (1st Cir. 2004), and will uphold the BIA's decision if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)(quoting 8 U.S.C. § 1105a(a)(4)). Under this standard, "[t]o reverse the BIA finding, we must find that the evidence not only supports that conclusion, but compels it." Id. at 481 n.1 (emphasis in original).

## A. Credibility

In order to establish eligibility for asylum, "an alien must support [her] claim of persecution through credible testimony. Credible testimony, standing alone, may be adequate to sustain the alien's burden of proof. But if the proffered testimony is not credible, it may be either disregarded or sharply discounted . . . ." Nikijuluw v. Gonzáles, 427 F.3d 115, 121 (1st Cir. 2005) (internal citation omitted).

Both Jiang and the government took the position in their briefs that the BIA did not address the IJ's adverse credibility determination and, in effect, assumed that Jiang presented credible testimony. However, having carefully reviewed the BIA's decision, we believe that the parties have erroneously interpreted that decision.

The BIA stated that it agreed with the IJ's decision

> to the extent that the [IJ] determined that [Jiang] failed to carry her burden of proof with respect to her claim for asylum . . . In this regard, the [IJ] identified a number of assertions by [Jiang] which are of such a nature that they would reasonably require corroboration in order to merit the assignment of full probative value. However, the record is devoid of such objective evidence.

(emphasis added). It is true that the BIA agreed with the IJ's decision because it found that Jiang had failed to carry her burden of proof. However, it appears to us that the reason the BIA found Jiang had failed to carry her burden of proof was that portions of her testimony were not entirely credible and therefore required corroborative evidence, which Jiang did not provide.

This conclusion is bolstered by two other portions of the BIA's decision. First, in support of its statement that Jiang should have provided certain corroborative evidence, the BIA cited Sidhu v. INS, 220 F.3d 1085 (9th Cir. 2000). Sidhu involved a situation where the BIA made an adverse credibility finding and denied the petitioner's asylum application because the petitioner

failed to present certain corroborating evidence. As in Sidhu, id. at 1092, it appears that the BIA in the instant case was affirming the IJ's adverse credibility determination and requiring corroborative evidence. Second, the BIA stated near the end of its decision that "[i]nasmuch as we are in agreement with the decision of the [IJ] as noted above, we adopt and affirm his decision." The IJ's decision focused almost exclusively on Jiang's credibility. It would not make sense for the BIA to state that it adopted the IJ's decision if it in fact did not even purport to address the majority of that decision. For all these reasons, we believe that the BIA affirmed the IJ's credibility determination.[6]

When "the BIA adopt[s] the IJ's credibility determination and decision, we review the IJ's decision as the adopted final agency determination." Chen v. Gonzáles, 418 F.3d 110, 113 (1st Cir. 2005). We review the credibility determinations of the IJ or BIA under the substantial evidence standard and will uphold the credibility determination "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Kheireddine v. Gonzáles, 427 F.3d 80, 88 (1st Cir. 2005) (quoting 8 U.S.C. § 1252 (b)(4)(B)). Often adverse credibility determinations are made as a result of inconsistencies in a petitioner's testimony or the

_____

[6] Jiang cites to several cases in her brief wherein the BIA did not address the petitioner's credibility yet required certain corroborative evidence. However, in those cases the BIA explicitly stated that it was either not addressing credibility or was assuming credibility. That is not the situation in Jiang's case.

demeanor of the petitioner while testifying. See, e.g., Long v. Gonzáles, 422 F.3d 37, 39-41 (1st Cir. 2005) (inconsistencies); Falae v. Gonzáles, 411 F.3d 11, 15 (1st Cir. 2005) (demeanor). In the instant case, however, the IJ focused on aspects of Jiang's testimony that he found inherently implausible. We have stated that where adverse credibility findings are based on "analysis of testimony rather than on demeanor [such findings] deserve less than usual deference." Cordero-Trejo v. INS, 40 F.3d 482, 487 (1st Cir. 1994) (internal quotation marks and citation omitted).

We believe that some of the "implausibilities" identified by the IJ were adequately explained by Jiang in her testimony. For example, the IJ found it "curious" that Jiang's family did not discuss the fact that Jiang's father was going into hiding, and that Jiang's father was gone for four or five days before she noticed his absence. Jiang explained this by stating that her father was often away for days at a time visiting friends and relatives, so she thought nothing of his absence at first. Jiang further explained that her mother did not immediately tell her that her father had gone into hiding because she was still a child at the time and her mother did not want her to worry. This explanation is plausible, in that parents often keep problems from their children.

However, other implausibilities were not so easily explained. For example, Jiang stated that she escaped from

captivity when a typhoon broke a small window in her cell, so that she was then able to climb through and jump to the ground below. As the IJ noted, if Jiang were being held as she claimed, it is unlikely that she was being held in a room with a window which she could access and escape through. Further, if officers had taken Jiang and she had escaped, it is highly likely that the officers would have at the least questioned her mother about Jiang's whereabouts, put Jiang's mother under surveillance, or even put Jiang's mother in detention. After all, the authorities would have still been looking for Jiang's father, and would also want to find Jiang, who had escaped. It does not appear from the record that any of this ever occurred. In fact, Jiang testified that her mother and sister still live in the same location in China, and neither has reported any problems to Jiang since she came to the United States.

Reviewing for substantial evidence, we are not compelled to conclude that the BIA and IJ erred in the adverse credibility determination. While we think that certain aspects of Jiang's testimony which the IJ found problematic were adequately explained by Jiang, other portions were not. On the whole, Jiang's story simply was not entirely credible and would have been greatly helped by corroborative evidence such as an affidavit from Jiang's mother (who was able to send a copy of the bookstore's business license to Jiang). We therefore affirm the adverse credibility determination.

-11-

## B.  Past Persecution

The adverse credibility determination disposes of Jiang's claim of past persecution.  However, we wish to note that, even assuming Jiang's testimony was credible, her experiences do not rise to the level of past persecution.[7]  "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering."  Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000) (no persecution where petitioner was briefly detained on three separate occasions, physically abused, and occasionally under surveillance).  In the instant case, although Jiang was allegedly detained for a week, she was fed every day and was never physically harmed in any way.  We are not compelled to find that her alleged experiences constituted past persecution.

## C.  Well-Founded Fear of Future Persecution

Since Jiang has not proven past persecution, she is not entitled to a presumption of a well-founded fear of future persecution.  However, she can still demonstrate a well-founded fear if she shows that her fear is "both genuine and objectively reasonable."  Aguilar-Solís, 168 F.3d at 572.  Both the objective and subjective prongs of this test depend on an applicant's credibility.  To satisfy the subjective prong, the applicant must

---

[7]  We believe this to be true even considering Jiang's age (sixteen) at the time of the events that allegedly occurred in China.

show her fear is genuine. Palma-Mazariegos v. Gonzáles, 428 F.3d 30, 35 (1st Cir. 2005). To satisfy the objective prong, the applicant "must show by credible evidence that her fear of future persecution is reasonable." Laurent v. Ashcroft, 359 F.3d 59, 65 (1st Cir. 2004).

Jiang claims that the BIA failed to consider whether Jiang had a well-founded fear of future persecution. Jiang is correct that the BIA never explicitly stated that Jiang did not have a well-founded fear. However, the BIA did state that Jiang had failed to carry her burden of proof for her asylum claim, and it gave as its main reason her lack of credibility and the need for certain corroborative evidence. The BIA's opinion certainly was not a model of clarity, and, in a different situation, we might be compelled to vacate its order. See, e.g., Halo v. Gonzáles, 419 F.3d 15, 19 (1st Cir. 2005) (vacating BIA's order where the BIA gave only a conclusory explanation for finding the petitioner did not make sufficient showing of persecution to meet burden of proof). In the instant case, however, we believe it is clear that the BIA and IJ based their decisions on the adverse credibility determination. Consequently, Jiang cannot meet either prong of the well-founded fear test. We therefore find substantial evidence to support the BIA's denial of Jiang's asylum claim.[8]

---

[8] We also note that the fact that Jiang's mother and sister continue to live in China and have not reported any problems to Jiang undercuts Jiang's claim of having a well-founded fear. See

### III.  Conclusion

For the foregoing reasons, the BIA's denial of Jiang's asylum claims is supported by substantial evidence.  We deny the petition for review and affirm the decision of the BIA.

**Affirmed**.

---

Ali v. Gonzáles, 401 F.3d 11, 16 (1st Cir. 2005) (citing the fact that the petitioner's family still lived safely in Ethiopia as one of the reasons that petitioner had failed to prove a well-founded fear).