**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3826
_____

LUXUN CHEN,
                                        Petitioner
                    v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-789-430)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 14, 2010
Before: RENDELL, FISHER and GARTH, Circuit Judges

Opinion filed: September 16, 2010
_____

OPINION
_____

GARTH, Circuit Judge.

        Petitioner Luxun Chen, a native and citizen of China, seeks review of a final order

of removal entered by the Board of Immigration Appeals (BIA). For the reasons that

follow, we will deny his petition for review.

1

I.

Chen entered the United States on May 20, 2006, without being inspected by an immigration officer. He was served with a notice to appear and, in his motion to change venue from New York City to Newark, New Jersey, conceded removability. Chen sought relief from removal by filing applications for asylum, withholding of removal, and protection under the Convention against Torture (CAT). In support of his applications, Chen alleged that he had been persecuted in China due to his participation in an unregistered Christian church.

At a hearing before the Immigration Judge (IJ), Chen testified that in China, he had been raised Christian and had belonged to both a government-sanctioned church and an unauthorized "family church," each of which Chen had attended weekly. On September 23, 2005, the village leader discovered one of the family church services that Chen was attending, informed the worshipers that such gatherings were illegal, and threatened that they would "have trouble" if the gatherings continued. On December 30, 2005, the village leader and four other officials burst in on a Bible-study session of the family church and arrested three participants, including Chen. Chen was brought to a village office, where he was punched, kicked, and given little to eat, and was asked questions about the family church's membership, which he refused to answer. He was held for three days and released only once he agreed not to return to the family church. Motivated by his desire to continue participating in the family church and his parents' concerns for

2

his safety, Chen departed China for the United States in January 2006.

The IJ assumed that Chen was a credible witness, despite noting that his testimony lacked detail and corroboration from other witnesses, but concluded that the treatment to which Chen was subject did not rise to the level of past persecution. Relying on the findings contained in the State Department's 2008 International Religious Freedom Report for China (China Report), the IJ also determined that Chen also did not have a well-founded fear of future persecution as a result of his desire to practice his religion with a family church, and that he did not meet the standards for withholding of removal or protection under CAT. In an order dated August 31, 2009, the BIA affirmed, agreeing with the reasoning of the IJ. Chen then filed this petition for review.

II.

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. We must uphold the BIA's findings if they are supported by substantial evidence in the record, that is, "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). To the extent that the BIA "adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." He Chun Chen v. Ashcroft, 376 F.3d 215 (3d Cir. 2004).

To be eligible for asylum, an applicant must establish refugee status by

demonstrating past persecution or a well-founded fear of future persecution "on account of race, religion, nationality membership in a particularly social group, or political social group, or particular opinion." 8 U.S.C. 1101(a)(42)(A). Persecution refers not to "all treatment our society regards as unfair, unjust, or even unlawful or unconstitutional," but rather, only to "extreme" conduct, such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda v. Att'y Gen., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d. Cir. 1993)).

The BIA found that Chen's arrest, abuse, and three-day detention at the hands of village officials on account of his religious practice did not amount to past persecution. We agree. That isolated incident of physical abuse, which did not require Chen to receive medical treatment, does not constitute the extreme conduct necessary to support a finding of persecution. Kibinda, 477 F.3d at 119-20; Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005); Cai Luan Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004).

The BIA also found that Chen did not have a well-founded fear of future persecution. To establish that a fear of future persecution is "well-founded," an asylum applicant must show both that her "fear is genuine" and that "a reasonable person in [her] circumstances would fear persecution if returned to the country in question." Espinosa-Cortez v. Att'y Gen., 607 F.3d 101, 108 (3d Cir. 2010) (citations and internal quotation marks omitted). Chen asserts that his fear of future persecution is well-founded because

4

China has demonstrated a pattern or practice of persecution of family churches. He maintains that the IJ, whose analysis of asylum the BIA adopted, improperly based his decision on the Report's discussion of certain exceptional accounts of governmental tolerance of such churches; in support, Chen cites other portions of the China Report that indicate that some family churches are subject to persecution.[1]

The following is a portion of the China Report discussing treatment of family churches:

> The Government perceived unregulated gatherings or groups as a potential challenge to its authority and attempted to control and regulate religious groups to prevent the rise of sources of authority outside the control of the Government and the [Chinese Communist Party]. In some regions, government supervision of religious activity was minimal, with registered and unregistered churches existing openly and receiving similar treatment by the authorities. In other regions, local officials supervised religion strictly, and authorities placed pressure on unregistered churches. Local regulations, provincial work reports, and other government and party documents continued to exhort officials to enforce government policy regarding unregistered churches and illegal religious activities.
>
> There were reports of unregistered Protestant church networks and house churches during the reporting period. In some areas, government authorities pressured house churches to affiliate with one of the [state-sanctioned Patriotic Religious Associations] and to register with religious affairs authorities by organizing registration campaigns and by detailing and interrogating leaders who refused to register. In other parts of the country unregistered groups grew rapidly and the authorities did not pressure them to register.

---

[1] The report, if properly considered by the BIA and IJ, will suffice as substantial evidence to support the BIA's finding concerning future persecution. Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir. 2004); Kayembe v. Ashcroft, 334 F.3d 231, 236-37 (3d Cir. 2003).

5

> Some unregistered groups had significant membership, properties, financial resources, and networks. House churches encountered difficulties when their membership grew, when they arranged from the regular use of facilities for the purpose of conducting religious activities, or when they forged links with other unregistered groups or with coreligionists oversea. Urban house churches were sometimes limited to meetings of a few dozen members or less, while meetings of unregistered Protestants in small cities and rural areas could number in the hundreds openly and with the knowledge of local authorities.

(Emphasis added.) Although the report indicates that the Chinese Government's tolerance of family churches is not uniform, it provides a sufficient basis on which a reasonable fact finder could find that a member of a family church in China does not have a reasonable fear of persecution based on his religion. Ambartsoumian, 388 F.3d at 91 (concluding that although evidence in State Department country report "may be equivocal," the IJ was entitled to base his persecution determination thereon); Kayembe, 334 F.3d at 236-37 (3d Cir. 2003) (holding that State Department country report containing conflicting accounts of existence of persecution sufficiently supported BIA's determination because even though report "cuts both ways," it "does not mean that it does not constitute substantial evidence"). Therefore, we conclude that the BIA's denial of asylum were supported by substantial evidence in the record.

Because Chen does not satisfy the requisite burden of proof for a grant of asylum, he perforce cannot meet the higher standard needed for withholding of removal. Zubeda, 333 F.3d at 469-70. We also need not address any claim for CAT protection because Chen did not raise the argument before the BIA.

6

Accordingly, we will deny the petition for review.