Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 12-1325

XIU XIA ZHENG,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Thompson, Circuit Judges.

Michael Brown on brief for petitioner.
Jacob A. Bashyrov, Trial Attorney, United States Department of Justice, Office of Immigration Litigation, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Francis W. Fraser, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

February 11, 2013

**Per curiam**. Petitioner Xiu Xia Zheng seeks judicial review of a decision by the Board of Immigration Appeals ("BIA") denying her late-filed motion to reopen proceedings on her application for political asylum. We hold that the BIA did not abuse its discretion in holding that Zheng's untimely motion to reopen, filed some seven years after denial of her asylum petition, did not meet the exception to the 90-day filing requirement for changed country conditions material to the claims for asylum.

Zheng left her home in China on September 7, 2000, and journeyed to Detroit, Michigan, where she attempted to enter the United States on someone else's passport. The Immigration and Naturalization Service ("INS") detained Zheng at the airport and then placed her in removal proceedings on the ground that she was an arriving alien not in possession of a valid entry document. See 8 U.S.C. § 1182(a)(7)(A)(i)(I) (2006). The INS paroled Zheng into the United States under the custody of her father, who lived in Boston, Massachusetts, and then transferred her case to that jurisdiction.

Zheng admitted the INS's allegations and conceded her removability. She then submitted an application for political asylum. See id. § 1158. Zheng claimed that she feared persecution if she returned to China due to her membership in the Roman Catholic Church, which operates underground in China in defiance of an official government prohibition. According to Zheng, she was

-2-

kicked out of her school in China due to her religious beliefs, and later was threatened and interrogated by the police after she had her picture taken with a Catholic Archbishop. Zheng also applied for withholding of removal and for protection under the United Nations Convention Against Torture. See id. § 1231(b)(3)(A).

On September 18, 2002, in an oral decision, the Immigration Judge ("IJ") found that Zheng had failed to meet her burden of establishing a well-founded fear of future persecution in China based on her religion, and so denied her application for asylum. He emphasized that the rest of her family in China practiced Roman Catholicism and attended church services without any trouble from the government. The IJ also found that Zheng had failed to establish her eligibility for withholding of removal or protection under the Convention Against Torture. Zheng appealed the IJ's decision to the BIA, which dismissed her appeal on May 13, 2004. Zheng subsequently filed a timely motion for reconsideration with the BIA, which was also denied.[1] Zheng, however, did not leave the country, despite a final order of removal.

Seven years later, on August 25, 2011, Zheng, still in the United States, filed a motion with the BIA to reopen her removal proceedings based in part on a claimed change in country

---

[1] The record does not indicate, nor does Zheng claim, that she petitioned for review of the BIA's decision to this Court.

conditions in China that was material to her asylum application.[2] Ordinarily, Zheng would have to file a motion to reopen removal proceedings within 90 days of the final order of removal. See id. § 1229a(c)(7)(C)(i). That time period had long since passed in this case, since the previous proceedings concluded in May 2004.

However, there is no time limit on filing a motion to reopen asylum proceedings if the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." Id. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii) (2012). Zheng carried the burden of demonstrating that her motion to reopen should be granted. See INS v. Abudu, 485 U.S. 94, 110-11 (1988). Her new evidence had to be material, which means it "would likely change the result in the case," In re Coelho, 20 I. & N. Dec. 464, 473 (B.I.A. 1992), and also, "at a bare minimum, establish a prima facie case sufficient to ground a claim of eligibility for the

_____

[2] Zheng also claimed that her personal circumstances had changed, because she had married a lawful permanent resident of the United States and given birth to two children in this country. She further asserted that she was eligible for adjustment of status based on an approved petition for an alien relative, I-130, filed on her behalf by her husband. The BIA denied both claims, and its decisions on those points are not at issue in this petition for review.

-4-

underlying substantive relief," <u>Raza</u> v. <u>Gonzales</u>, 484 F.3d 125, 128 (1st Cir. 2007).

Zheng's motion to reopen contained a sworn affidavit from herself, an unsworn letter from her mother in China, a written notice given to her mother by the Xiguan Village Committee in Fujian Province, China, and several articles on recent country conditions in China. According to Zheng, in March 2011 she mailed a package containing religious materials to her relatives in China, which included pictures showing her participation in Roman Catholic activities and a letter criticizing the Chinese government's restrictions on religion and human rights and stating that she had applied unsuccessfully for asylum in the United States. Allegedly, Chinese customs officials intercepted the package and local officials went to her mother's house to tell her that Zheng was "participating in the counter-revolution[ary] church activities in America." According to Zheng, the officials gave her mother a written notice from the Village Committee ordering her to instruct Zheng to cease applying for asylum in the United States, to stop her "reactionary conduct of inciting Chinese Catholics to become resentful towards the Chinese government's current policy on religion," and to "immediately return to China to accept stringent punishment from the government." The notice warned that if Zheng did not return voluntarily to China to accept punishment, once she

was caught she "not only would be stringently punished, but would also be imprisoned."

On February 23, 2012, the BIA denied Zheng's motion to reopen. It found that her motion was untimely because Zheng's evidence was not material to her case, so that Zheng had not carried her burden of showing the changed country circumstances exception applied. Specifically, the BIA found that Zheng's documentary evidence was merely speculative as to what will happen to her in China, and that it did not demonstrate that her possible treatment in China, including arrest, would amount to persecution. It noted that the letter from Zheng's mother was unsworn and that the written notice from the Village Committee was unauthenticated. The BIA concluded that this evidence was not sufficient to meet Zheng's burden to show that the result of her application for asylum would likely change if the proceedings were reopened. The BIA also found that Zheng's background evidence showed no more than that the Chinese government continued to take repressive actions against Roman Catholics, and did not show that conditions for Roman Catholics in China had materially worsened since her previous hearing in 2002.

Zheng now petitions for review of the BIA's denial of her motion to reopen. We review the BIA's decision on this matter for abuse of discretion, see 8 C.F.R. § 1003.2(a); INS v. Doherty, 502 U.S. 314, 323-24 (1992); Tandayu v. Mukasey, 521 F.3d 97, 100 (1st

-6-

Cir. 2008), which means we will uphold its decision "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way," Tandayu, 521 F.3d at 100 (quoting Raza, 484 F.3d at 127) (internal quotation marks omitted). Our review is "highly deferential, focusing on the rationality of the decision to deny reconsideration and reopening, not on the merits per se, of the underlying claim." Abdullah v. Gonzales, 461 F.3d 92, 99 (1st Cir. 2006).

We reject Zheng's claim that the BIA erred by discounting the evidentiary value of the notice from the Xiguan Village Committee because it was unauthenticated. Federal regulations provide that government documents from China may be authenticated "by an official publication thereof, or by a copy attested by an officer so authorized." 8 C.F.R. § 1287.6(b); see Jiang v. Gonzales, 474 F.3d 25, 29 n.4 (1st Cir. 2007). Zheng argues that the BIA may not exclude documentary evidence solely because it has not been authenticated pursuant to § 1287.6.

We have acknowledged that § 1287.6 "offers only a method -- not the exclusive method -- for authenticating a record in an asylum case," and that noncompliance with § 1287.6 "is not an absolute bar to the admissibility of a foreign document in an asylum hearing." Jiang, 474 F.3d at 29. But when the BIA considers a motion to reopen proceedings, it has the discretion to

afford less evidentiary weight to unauthenticated government documents from China, see Le Bin Zhu v. Holder, 622 F.3d 87, 92 (1st Cir. 2010); see also Jiang, 474 F.3d at 29 (same rule for IJs), and here the BIA did not exclude the Village Committee notice but simply found it less persuasive. Given Zheng's position, it likely would have been quite difficult for her to obtain a notarized copy of the notice in accordance with § 1287.6, but our cases make clear that alternative authentication methods would have been acceptable. "[A]uthentication requires nothing more than proof that a document or thing is what it purports to be and, even though the Federal Rules of Evidence spell out various options, the rules also stress that these options are not exclusive and the central condition can be proved in any way that makes sense in the circumstances." Yongo v. INS, 355 F.3d 27, 30-31 (1st Cir. 2004) (citing Fed. R. Evid. 901-902). For instance, in this case, Zheng could have proved that the notice was what she said it was by submitting evidence that the "Fujian Province Changle City Wuhang Town Xiguan Village Committee" actually existed and had law enforcement responsibilities or by comparing the seal on her notice to the seals on other notices issued by the Committee. But Zheng made no such alternate attempt to authenticate the notice, and § 1287.6 includes no exceptions to the authentication requirement. The BIA's role in determining whether the petitioner's evidence is material pursuant to 8 U.S.C. § 1229a(c)(7)(C)(ii) is, in effect,

to evaluate whether the evidence presented would change the results of the case if it were reopened. Because determining the authenticity of and weight to be given to the documents is within this analysis, it is also within the BIA's discretion when it considers a motion to reopen. We cannot say this was an abuse of discretion.

The crux of Zheng's challenge is to the BIA's conclusion that she failed to establish that she would be subject to treatment severe enough to constitute "persecution" if she returned to China, and thus that the evidence she brought forth to establish changed circumstances was not material. Zheng argues that her mother's letter and the notice from the Village Committee, with its language that Zheng "not only would be stringently punished, but would also be imprisoned", together demonstrate that she faces the threat of arrest and imprisonment, and that this threat rises to the level of "persecution" under the asylum statute. Id. § 1101(a)(42)(A). While neither Zheng's brief nor the record indicates what "stringent punishment" means in this context, it could mean punishment that is severe, strict, and rigorous. See Merriam Webster's Collegiate Dictionary 1165 (10th ed. 1993). But Zheng gave the BIA nothing to indicate where along the continuum this would lie, much less its relationship to persecution.

The BIA defines persecution as "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who

-9-

differ in a way regarded as offensive." In re Acosta, 19 I. & N. Dec. 211, 222 (B.I.A. 1985). To count as "persecution" within the meaning of the asylum statute, an experience "must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). In general, brief periods of detention, without accompanying physical abuse, have not been found to constitute "persecution." See Li Fang Chen v. Filip, 308 F. App'x 502, 503 (2d Cir. 2009); Ping Zheng v. Gonzales, 189 F. App'x 564, 567-68 (7th Cir. 2006); see also Li v. Gonzales, 405 F.3d 171, 177 (4th Cir. 2005) (collecting cases). In this circuit, we have held that detention lasting seven days, on its own, does not rise to the level of persecution, Jiang v. Gonzales, 156 F. App'x 336, 341 (1st Cir. 2005), and our sister circuits have concluded that much longer periods of time, even when accompanied by some physical abuse, do not qualify as persecution under the asylum statute. See, e.g., Jian Yong Yang v. Att'y Gen. of the United States, 442 F. App'x 668, 671 (3d Cir. 2011) (19 days of detention and one-minute beating); Ly v. Holder, 421 F. App'x 575, 576-77 (6th Cir. 2011) (thirty days of detention in "grueling" conditions); Luxun Chen v. Att'y Gen. of the United States, 393 F. App'x 959, 960 (3d Cir. 2010) (three days of detention during which detainee was punched, kicked, and given little to eat); Li Qin Lin v. Att'y Gen. of the United States, 386 F. App'x 126, 128-29 (3d Cir. 2010) (eight days of detention with inadequate food and a

single, ten-minute beating); Xinlu Wang v. Att'y Gen. of the United States, 338 F. App'x 809, 812 (11th Cir. 2009) (three days of detention with daily beatings).

Zheng's evidence suggests that she may be arrested and imprisoned if she returns to China, but it does not indicate how long her detention would last, nor does it intimate that she would be subject to any physical abuse. Aside from the Village Committee notice, Zheng's evidence primarily consisted of "self serving affidavits from petitioner and her immediate family [which] are of limited evidentiary value." Zheng v. Mukasey, 546 F.3d 70, 72 (1st Cir. 2008); see also Le Bin Zhu v. Holder, 622 F.3d 87, 92 (1st Cir. 2010). The reference to "stringent punishment"[3] in the Village Committee notice is troubling, but in the absence of other indications that she would be subject to treatment constituting persecution -- for instance, evidence of previous incidents in which receipt of similar notices was followed by actual persecution, or evidence that this language had a given meaning supporting her claim -- it was not arbitrary for the BIA to find that Zheng had not met her burden. Zheng's evidence is speculative as to what punishment she would face upon being returned to China, and she bears a "heavy burden" of demonstrating that the outcome of her asylum proceedings are likely to change if they are reopened.

---

[3] From context the "stringent punishment" appears to refer to less than imprisonment.

See Abudu, 485 U.S. at 110; Coelho, 20 I. & N. Dec. at 473.  Zheng failed to meet that burden.  Again, we cannot say the BIA abused its discretion.

Alternatively, Zheng alleges that the BIA neglected to assess specifically whether her evidence was previously unavailable, and whether the Chinese government's negative reaction to her letter could amount to a change in country circumstances. But so long as the BIA "has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented."  Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000) (quoting Martinez v. INS, 970 F.2d 973, 976 (1st Cir. 1992) (internal quotation mark omitted).  The BIA did so here.

Finally, we reject Zheng's argument that the BIA should have granted her motion to reopen proceedings because she has established prima facie eligibility for asylum.  The BIA did not reach that issue and it need not have done so.  See Smith v. Holder, 627 F.3d 427, 433-34 (1st Cir. 2010).

The petition for relief is denied.

So ordered.