**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

---

No. 12-1654

GI KUAN TSAI,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, <u>Chief Judge</u>,
Howard, <u>Circuit Judge</u>,
and Casper,[*] <u>District Judge</u>.

---

<u>Cora J. Chang</u> on brief for petitioner.
<u>Gregory M. Kelch</u>, Trial Attorney, United States Department of
Justice, Office of Immigration Litigation, <u>Linda S. Wernery</u>,
Assistant Director, Civil Division, and <u>Stuart F. Delery</u>, Acting
Assistant Attorney General, Civil Division, on brief for
respondent.

---

March 6, 2013

---

---

[*]   Of the District of Massachusetts, sitting by designation.

**CASPER, District Judge**.  Petitioner Gi Kuan Tsai seeks review of the decision by the Board of Immigration Appeals ("BIA") denying his untimely motion to reopen removal proceedings on the basis that he failed to meet the exception to the ninety-day filing requirement for changed country conditions material to the claim for asylum.  Finding no abuse of discretion, we deny Tsai's petition for review.

## I.  Facts & Background

Tsai is a native and citizen of China who entered the United States at Los Angeles International Airport on May 8, 2000 using a counterfeit passport and counterfeit non-immigrant visa, both in the name of Zhao Jian Min.  Tsai was detained by immigration officials and on May 9, he gave a sworn statement to an Immigration and Naturalization Service officer.  When asked the purpose of his visit, Tsai replied, "I come here to make a living.  The American policy is more human and they respect human rights."  Tsai explained that he had opened a restaurant in China, but did not want to pay the "many taxes."  Tsai also mentioned that he wanted to have more children, but did not mention his wife being forced to have an IUD implanted or being forced to have an abortion.  At a subsequent interview with an immigration officer on May 23, 2000, Tsai said that he had only one child because Chinese officials made his wife get an abortion when she got pregnant again in violation of the one child policy.  He added that he was not

-2-

asked about his wife's abortion during the interview on May 9. Tsai also said he was afraid to return to China because he would like to have more children and would be apprehended, jailed and fined for fleeing China illegally.

On May 7, 2001, Tsai filed an "Application for Asylum and for Withholding of Removal." In the application, he explained that after his wife gave birth to their son, the Chinese authorities forced his wife to have an IUD implanted. According to Tsai, his wife became pregnant despite the presence of the IUD and Chinese officials forced her to have an abortion.

On January 10, 2003, Tsai appeared before an Immigration Judge ("IJ") and testified about his wife's forced abortion and closing his eatery because he refused to pay the taxes. The IJ denied Tsai's application for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"). The IJ noted that the record did not contain any evidence apart from Tsai's own testimony concerning his wife's abortion or his tax debt. The IJ found that Tsai's testimony "cannot be given any credence" because (1) he "consistently lied" by using a false name, a fraudulent passport and a fraudulent non-immigrant visa upon arrival in the United States; and (2) he failed to mention his wife's abortion when questioned about the reason he came to the United States during his initial sworn statement during the May 9 interview upon arrival in the U.S. The IJ further noted that Tsai

had failed to provide documentary evidence of his wife's abortion and IUD and his tax issues. The IJ found that Tsai could have obtained these materials because he was able to proffer some documents from China such as his wife's and son's birth certificates. Based on Tsai's lack of credibility and lack of corroborating evidence supporting his claims, the IJ denied Tsai's application.

On appeal, the BIA affirmed the IJ's decision. The BIA noted that the IJ's credibility analysis was "minimal," but upon its own review of the record the BIA declined to set aside the IJ's decision. The BIA based its decision on the material inconsistency between Tsai's sworn statement on May 9 and his asylum application and later testimony. Given this inconsistency, "[Tsai's] testimony alone is not sufficient to sustain the burden of proof." The BIA considered that Tsai failed to offer corroboration and "did not convincingly explain the absence of corroboration of his wife's alleged hospitalization, abortion or the insertion of an IUD," which were "reasonably available . . ., especially in light of the other documents he received from China."

Tsai petitioned for judicial review of the BIA's decision. See Tai v. Gonzales, 423 F.3d 1 (1st Cir. 2005). This Court denied Tsai's petition and held that the BIA's adverse credibility finding was supported by substantial evidence because it was based on Tsai's initial failure to mention his wife's

contraception and abortion, which was a discrepancy that "went to the heart of [Tsai's] claim." Id. at 5.

On September 14, 2011, many years after the IJ's 2003 decision and the BIA's 2004 decision, Tsai filed a motion to reopen his removal proceedings. As required to excuse his failure to file a motion to reopen within the ninety-day regulatory window, 8 C.F.R. § 1003.2(c)(3)(ii), Tsai argued that "his allegations of new facts arising in China constitute changed country circumstances that materially affect his eligibility for asylum." In support of his motion, he offered: (1) his own sworn affidavit; (2) unsworn letters purporting to be from his wife, son and neighbor;(3) unauthenticated hospital records; and (4) an April 2011 State Department report on China.

Tsai claimed in his affidavit that during a telephone call with his wife in February 2011, he told her that United States citizens enjoy "democracy, freedom and human rights," that the Chinese government is "inhumane" and is the only government that "forces" people to undergo abortions and sterilizations, and that Chinese citizens should oppose the "coercive family planning policy." Tsai claimed that his wife discussed these remarks with their neighbors in China. Tsai also claimed that in March 2011, he sent his wife "many reports and articles" that "reveal the cruelty of Chinese government to slaughter lives and persecute women under the coercive family policy and . . . criticize the Chinese

government to undermine human rights of Chinese people" and asked her to distribute them to their neighbors. According to Tsai, his wife did so and was arrested, beaten and detained by the police in April 2011 for these actions.

Tsai also provided written statements purporting to be from his wife, his son and a neighbor along with English translations of those documents. They were all dated July 15, 2011, written in support of Tsai's motion to reopen and contained very similar (if not identical) language recounting the same account of events Tsai made in his affidavit.[1] A prescription note from Changle City Hospital indicated that Tsai's wife was prescribed medication for a "[s]oft tissue contusion" on April 11, 2011. Tsai also provided his wife's medical records from the Medical Institution of Fuzhou City indicating that she experienced symptoms "after [being] beaten by someone yesterday." Tsai's wife explained in her letter that the hospital declined to provide

---

[1] For example, Tsai's wife's letter said, "In March 2011, after my husband collected some reports and articles to reveal the cruelty of Chinese government on slaughtering lives by executing coercive family planning policy and on persecuting many women and to denounce Chinese government for violation of people's human rights, he mailed these materials to our home in China." Similarly, Tsai's son's letter explained that his father sent "reports and articles [that] revealed the cruelty of Chinese government to slaughter lives and persecute women under the coercive family planning policy and to criticize [the] Chinese government to undermine human rights of Chinese people." Tsai's wife expressed that her "neighbors and I were shocked after we read through these materials" and Tsai's neighbor also recounted that "[w]e were shocked after reading those reports and articles."

authentication of her medical records and prescription note. Tsai did not provide any official documentation of his wife's arrest. According to Tsai's wife, she went to the police station and asked for official documentation of her arrest, but was ordered to go home.

On April 25, 2012, the BIA denied Tsai's motion to reopen the removal proceedings. The BIA considered Tsai's evidence and found that it did not "satisfy the heavy burden of establishing materially changed circumstances." The BIA also stated that the evidence was insufficient with regard to the documentation "allegedly issued by a hospital, which has not been authenticated in any manner" and in light of the IJ's previous adverse credibility determination. Tsai timely filed this petition seeking review of the BIA's denial of his motion to reopen.

## II. Analysis

We review the BIA's denial of a motion to reopen for abuse of discretion, which means an error of law or exercise of judgment in an arbitrary and capricious or irrational manner. Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007). We will "uphold the [BIA's] subsidiary findings of fact as long as they are supported by substantial evidence," and review "embedded legal conclusions de novo," and "judgment calls for abuse of discretion." Vaz Dos Reis v. Holder, 606 F.3d 1, 3 (1st Cir. 2010). Our review "is highly deferential, focusing on the rationality of the decision

to deny reconsideration and reopening, not on the merits per se, of the underlying claim." Abdullah v. Gonzales, 461 F.3d 92, 99 (1st Cir. 2006).

"Motions to reopen removal proceedings are disfavored as contrary to 'the compelling public interests in finality and the expeditious processing of proceedings.'" Raza, 484 F.3d at 127 (quoting Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir. 2005)). "As a result, the BIA enjoys considerable latitude in deciding whether to grant or deny such a motion," id., and a person seeking to reopen such proceedings bears a "heavy burden." Ven v. Ashcroft, 386 F.3d 357, 361 (1st Cir. 2004) (quoting In re Coelho, 20 I. & N. Dec. 464, 472 (BIA 1992)) (internal quotation marks omitted).

"There are both substantive and procedural bars to reopening removal proceedings." Smith v. Holder, 627 F.3d 427, 433 (1st Cir. 2010). Procedurally, a petitioner is limited to a single motion to reopen a removal proceeding, which must be submitted within ninety days of the final administrative decision. 8 C.F.R. § 1003.2(c)(2). However, these procedural limitations are "relaxed" if a petitioner "makes a convincing demonstration of changed conditions in his homeland." Smith, 627 F.3d at 434 (quoting Tandayu v. Mukasey, 521 F.3d 97, 100 (1st Cir. 2008)) (internal quotation marks omitted). "The change in conditions 'must be material to the underlying substantive relief that the

-8-

alien is seeking . . . and the evidence tendered in support thereof must have been unavailable during the prior proceedings.'" Id. (omission in original) (quoting Raza, 484 F.3d at 127). Substantively, the BIA may deny a petition if it determines that the movant has failed to meet either of two requirements: (1) establish a prima facie case for the underlying relief sought; and (2) introduce previously unavailable, material evidence. Id. at 433.

Tsai brought his motion to reopen more than ninety days after the BIA's final administrative decision. Because he missed the ninety-day window, Tsai must demonstrate changed conditions in China that are material to his application for asylum, withholding of removal and CAT protection. The BIA denied Tsai's motion because the evidence he presented in support of his motion failed to "satisfy the heavy burden of establishing materially changed circumstances." The heart of Tsai's challenge to the BIA's ruling is his contention that the BIA failed to give adequate weight to that evidence.

Tsai argues that the BIA erred as a matter of law in refusing to accord proper weight to the supporting documents and by denying his motion based in part on the IJ's prior adverse credibility finding. Specifically, Tsai argues that the BIA erred in considering that the hospital records were not "authenticated in any matter" when rendering its decision and such alleged lack of

authentication should not be detrimental to his motion to reopen. Tsai asserts that "to the extent that he is facing the prospect of harm and persecution in China, it is equally impractical for him to personally have the Chinese government authenticate his wife's hospital medical record" pursuant to 8 C.F.R. § 1287.6. However, in considering materials offered in support of a motion to reopen, the "BIA has discretion to deem a document's lack of authentication a telling factor weighing against its evidentiary value," Hang Chen v. Holder, 675 F.3d 100, 107 (1st Cir. 2012), notwithstanding the difficulty a Chinese citizen may have authenticating the record pursuant to 8 C.F.R. § 1287.6. See Xiu Xia Zheng v. Holder, No. 12-1325, 2013 WL 491965, at *3 (1st Cir. Feb. 11, 2013) (holding that it was not an abuse of discretion for the BIA to discount the evidentiary value of the Chinese petitioner's evidence where it lacked authentication pursuant to 8 C.F.R. § 1287.6 or an alternative authentication method); cf. Yan v. Gonzales, 438 F.3d 1249, 1256 n.7 (10th Cir. 2006) (explaining that because the "authentication procedures [described in 8 C.F.R. § 1287.6] generally require attestation of documents by the very government the alien is seeking to escape, courts generally do not view the alien's failure to obtain authentication as requiring the rejection of a document," but, the IJ may find this evidence to be of limited evidentiary value).

Moreover, the BIA's decision did not solely rest on the limited weight ascribed to an unauthenticated document, but also relied upon consideration of an IJ's prior adverse credibility finding against the petitioner. Giving limited weight to unauthenticated evidence where the petitioner's own credibility remains at issue is an appropriate exercise of discretion. See Le Bin Zhu v. Holder, 622 F.3d 87, 92 (1st Cir. 2010) (noting that it is "well within the BIA's discretion to find that lack of authentication undermines the evidentiary value of a document" and that "[t]his is especially the case when, as here, the BIA's decision to do so is supported by an adverse credibility finding").

Tsai further argues that it was error for the BIA to rely on this lack of authentication because authenticity is a question of fact and the BIA, as an appellate body, should not engage in factfinding. Although Tsai is correct that "the Board will not engage in factfinding in the course of deciding appeals," 8 C.F.R. § 1003.1(d)(3)(iv), this case concerns a motion to reopen and not an appeal of an IJ's decision. Furthermore, as discussed above, this Court has repeatedly held that the BIA may assess the authenticity of a petitioner's evidence when deciding a motion to reopen. See, e.g., Zheng, 2013 WL 491965, at *3.

The BIA was also within its discretion in finding that Tsai's affidavit and the letters from Tsai's wife, son and neighbor did not satisfy the "heavy burden" of establishing materially

-11-

changed circumstances given that they were self-serving; i.e., each was produced for the purpose of reopening Tsai's final order of removal and written by the petitioner's family or a person close to the petitioner. See Le Bin Zhu, 622 F.3d at 92 (holding that the BIA was within its discretion in finding that a letter allegedly sent by the petitioner's mother did not establish material changed circumstances); Zheng v. Mukasey, 546 F.3d 70, 72 (1st Cir. 2008) (noting that "[a]bsent substantiation, self serving affidavits from petitioner and her immediate family are of limited evidentiary value").[2]

Tsai also argues that the BIA should have granted his motion to reopen because he made a prima facie showing of eligibility for asylum. However, the question of whether a petitioner has presented sufficient evidence of changed country conditions to excuse the untimely filing of a motion to reopen is distinct from the question of whether this evidence, along with the evidence already in the record, shows that the petitioner has a reasonable likelihood of prevailing on his asylum claim. See Smith, 627 F.3d at 433. The BIA did not abuse its discretion in

---

[2] Tsai also argues that the BIA failed to evaluate whether his alleged new facts are material. This argument is without merit because the BIA considered the evidence upon which Tsai relied in support of his motion and explained that it did "not find that the evidence presented satisf[ied] the heavy burden of establishing materially changed circumstances" and we have found that this determination does not constitute an abuse of discretion.

concluding that Tsai failed to make a convincing demonstration of materially changed conditions in China, and thus Tsai did not make the showing necessary to relax the procedural limitations such that he could file an untimely motion to reopen. Accordingly, the BIA did not need to address the merits of Tsai's claim, that is, whether or not he made a prima facie case for eligibility for asylum. See id. at 440 (treating the establishment of a change in country conditions that would excuse the petitioner's late filing and the showing of a prima facie case of eligibility for asylum as discrete and sequential inquiries); Larngar v. Holder, 562 F.3d 71, 80 (1st Cir. 2009) (same).

### III. Conclusion

For the foregoing reasons, Tsai's petition for review is denied.