**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 05-1241

XIU LI YUAN a/k/a YONG XIU LIN,

Petitioner,

v.

ALBERTO GONZALES, Attorney General

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,

and Howard, Circuit Judge.

Haian Lin for petitioner.
Michael J. Sullivan, United States Attorney and Anita Johnson, Assistant United States Attorney on brief for respondent.

November 23, 2005

**Per curiam.** Petitioner Xiu Li Yuan, a citizen of the People's Republic of China, unlawfully entered the United States on July 7, 2000 and applied for asylum, withholding of removal, and protection under the Convention Against Torture. Yuan sought relief on the ground that the Chinese government forced her to have an abortion. See 8 U.S.C. § 1101(a)(42)(A). An Immigration Judge (IJ) denied Yuan's relief requests, and the Board of Immigration Appeals (BIA) affirmed. Yuan has timely petitioned this court for review of the final agency decision. We deny the petition.

At her removal hearing, Yuan testified as follows. She resided in Fujian Province of China, and, in December 1994, married Xin Ren Chen. The couple registered their marriage in August 1995. At that time, Yuan was visibly pregnant. The government official with whom they registered told Yuan that she was pregnant "early" and, therefore, assessed a substantial fine. In July 1995, "the local commune" damaged the couple's house because they had not paid the fine. Five or six people came to the house and told Yuan to pay, before damaging the doors and windows with hammers. Chen was not at home when the damage occurred. Yuan described the house as facing a roadway.

After Yuan's son was born, the government forced Yuan to have an intrauterine device (IUD) inserted. But the IUD fell out, and she became pregnant with the couple's second child. When the government discovered this pregnancy, it immediately forced Yuan to

-2-

have an abortion.  Yuan's son was at her mother's house when the abortion occurred, and Chen was at work.  After the abortion, Yuan called Chen, and he met her at her mother's house that afternoon.  Several days later, the government forced Yuan to have another IUD inserted.  Yuan substantiated her testimony with documentary submissions, including a certificate of abortion dated March 1998 and a picture purporting to show the damage to the house.

Chen also testified at the removal hearing.  Concerning the damage to the house, Chen stated that the government imposed the fine in January 1996 because of the early birth of their son.  The local authorities came to inform him of the fine and gave him several days to pay.  When he failed to do so, a "cadre" smashed the windows and doors of his house.  He said he was at home when the attack occurred.  In describing the house, Chen explained that it had open space in front and abutted other inhabited homes in the rear.

Regarding the abortion, Chen testified that, on the date it was performed, he was hiding in another village.  Yuan called him from the hospital to tell him about the procedure.  At that time, their son was staying with his aunt.  Chen met Yuan at their home the following day and stayed with her for several days before leaving.

At the conclusion of the removal hearing, the IJ rejected Yuan's petitions for relief on the ground that her testimony was

not credible. The BIA affirmed on this basis.  Because the BIA adopted the IJ's reasoning, we review the IJ's decision directly. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003).

Yuan challenges the IJ's adverse credibility finding which was sufficient to warrant the denial of all forms of relief that Yuan sought.  We recently discussed the principles guiding our review of challenges of this type:

> [M]any asylum claims . . . depend on whether the statements made by an alien in support of the asylum application are accepted as credible.  When the agency's final decision rests on the ground that the alien was not credible, then, we see whether the determination of non-credibility is conclusive of [her] claim.  If the adverse credibility determination is supported by substantial evidence -- that is, if we cannot say a finding that the alien is credible is compelled -- then the decision must be affirmed.  There may be times when, in performing our judicial review function, we are impaired because the agency does not explain the adverse credibility finding. That situation does not arise when the IJ gives specific reasons for the determination, which are in turn supported by substantial evidence.

Chen v. Gonzales, 418 F.3d 110, 113 (1st Cir. 2005) (citations omitted).

To support the adverse credibility finding, the IJ identified material inconsistencies between Yuan's and Chen's testimony.  Yuan and Chen provided divergent accounts of the time of day that the abortion took place, Chen's and their son's location on that day, and the place and time that they met

-4-

thereafter. Yuan and Chen also provided inconsistent stories about the alleged damage to their house. They provided conflicting dates of when the fine was imposed and when the "cadre" came to damage the house. They also disagreed on whether Chen was at the house when the damage occurred.[1]

The IJ also found that much of the key documentary evidence was suspect. The IJ declined to credit the purported picture of the damaged house because the building in the picture differed materially from Chen's description. The IJ also declined to credit Yuan's purported abortion certificate because a State Department Report has stated that the Chinese government does not typically issue such certificates for forced abortions, and that such certificates are often forged by asylum applicants. See Qin v. Gonzales, 360 F.3d 302, 307 (1st Cir. 2003) (approving the BIA's reliance on State Department Report to discredit purported forced-abortion certificate).

The IJ made several findings, all supported by the record, that contributed to the overall conclusion that Yuan's testimony was not credible. The agency record is not so one-sided

---

[1]These inconsistencies pertain to the two incidents that most strongly supported Yuan's asylum claim. This case is therefore distinguishable from Ren v. Ashcroft, No. 04-1702, 2005 WL 1950805, at *4 (1st Cir. Aug. 16, 2005), in which we rejected the BIA's adverse credibility finding where the identified inconsistencies concerned the witnesses' interpretation of peripheral events which did not go "to the heart of the asylum claim."

-5-

that the IJ was compelled to reach the opposite conclusion regarding Yuan's credibility.

The petition for review is **<u>denied</u>**.