# United States Court of Appeals
## For the First Circuit

No. 13-1244

LI SHENG WU,

Petitioner,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Torruella and Kayatta, <u>Circuit Judges</u>.

<u>Joshua Bardavid</u> and <u>Bardavid Law</u>, on brief for petitioner.
<u>Deitz P. Lefort</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, <u>Stuart F. Delery</u>, Acting Assistant Attorney General, Civil Division, and <u>Derek C. Julius</u>, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

December 18, 2013

**TORRUELLA, Circuit Judge.** Petitioner Li Sheng Wu ("Wu"), a native and citizen of the People's Republic of China, challenges the Board of Immigration Appeals ("BIA") order denying his motion to reopen removal proceedings. Specifically, Wu disputes the BIA's finding that he failed to demonstrate prima facie eligibility for relief. After careful consideration, we deny Wu's petition for review.

## I. Background

Wu entered the United States without inspection on or before February 3, 2006. On that day, the Department of Homeland Security apprehended Wu in Texas and served him with a Notice to Appear before the Immigration Court. The Notice charged Wu with being subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Wu appeared before an Immigration Judge ("IJ") on April 19, 2006, and the IJ found that Wu had admitted the allegations against him and conceded removability.

On June 28, 2006, Wu submitted an application for asylum, withholding of removal, and relief pursuant to the Convention Against Torture ("CAT"). Wu claimed that he feared persecution due to China's population control policies. The IJ heard Wu's testimony and subsequently denied his applications on April 14, 2010, ordering Wu's removal to China. Wu appealed the IJ's decision to the BIA, which affirmed the denial of relief on July 26, 2011.

Wu timely moved to reopen his case on September 19, 2011, citing changed country conditions. Wu claimed that he had become a Christian and that the persecution of Christians in China had worsened since the IJ denied his asylum application in April 2010. Wu's motion and accompanying affidavit generally described the Chinese government's restrictions on the practice of religion, including the requirement that Christians worship in registered churches rather than unregistered "house churches." Wu also submitted a certificate of baptism, several online newspaper articles, a March 2011 report from ChinaAid, and a May 2011 report from the U.S. Commission on International Religious Freedom. The reports described the ongoing harassment of Christians in China, and the articles described a number of topics, including a government crackdown against an unregistered church in Beijing, political unrest in China, and the arrests of human rights advocates.

On June 7, 2012, the BIA denied Wu's motion to reopen removal proceedings, finding that the evidence Wu provided was insufficient to establish his prima facie eligibility for any form of relief. The BIA found that Wu had proffered only evidence that described the conditions for Christians in China generally. He failed to provide any evidence that the Chinese government was aware or was likely to become aware of his religious activities in the United States. The BIA concluded that, based on the proffered

evidence, Wu had not shown a reasonable likelihood that he would be targeted for persecution on account of his religion. Wu's timely petition for review followed.

## II. Analysis

Motions to reopen removal proceedings are generally disfavored because they run counter to "'the compelling public interests in finality and the expeditious processing of proceedings.'" Hang Chen v. Holder, 675 F.3d 100, 105 (1st Cir. 2012) (quoting Guerrero-Santana v. Gonzales, 499 F.3d 90, 92 (1st Cir. 2007)). Therefore, a BIA decision on a motion to reopen is accorded deference, and we review it only for abuse of discretion. Le Bin Zhu v. Holder, 622 F.3d 87, 91 (1st Cir. 2010); Carter v. I.N.S., 90 F.3d 14, 17 (1st Cir. 1996). This means that we will uphold the BIA's decision "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Le Bin Zhu, 622 F.3d at 91 (quoting Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2007)) (internal quotation marks omitted). In conducting this review, we accept the BIA's findings of fact "as long as they are supported by substantial evidence," and we review legal conclusions de novo. Smith v. Holder, 627 F.3d 427, 433 (1st Cir. 2010).

Because motions to reopen are governed by a number of statutory and regulatory provisions, we pause here to briefly describe the relevant legal landscape before proceeding. By

-4-

statute, "[a]n alien may file one motion to reopen proceedings." 8 U.S.C. § 1229a(c)(7). Such motions must meet two threshold requirements: 1) they must establish "a prima facie case for the underlying substantive relief sought" and 2) they must introduce "previously unavailable, material evidence." Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (quoting INS v. Abudu, 485 U.S. 94, 104 (1988)) (internal quotation marks omitted); 8 C.F.R. § 1003.2. A petitioner who seeks to establish a prima facie case for asylum must show that he is unwilling or unable to return to his country because of "persecution or a well-founded fear of persecution on the account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Of importance here, the "well-founded fear" requirement may be satisfied with evidence of a "reasonable likelihood" of future persecution, Smith, 627 F.3d at 437, so long as the fear is "genuine and objectively reasonable." Aguilar-Solís v. I.N.S., 168 F.3d 565, 572 (1st Cir. 1999); 8 C.F.R. § 208.13. Typically, to show that his fear is objectively reasonable, a petitioner must produce "credible, direct, and specific evidence supporting a fear of individualized persecution in the future." Decky v. Holder, 587 F.3d 104, 112 (1st Cir. 2009) (internal quotation marks omitted); see also Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007) ("Proving a future threat to life or freedom generally requires

-5-

individualized evidence that the applicant will be 'singled out' for persecution upon return to his home country.").

Applicants seeking withholding of removal or CAT relief face even greater hurdles than those seeking asylum.[1] See Santosa v. Mukasey, 528 F.3d 88, 92 n.1 (1st Cir. 2008) ("The standard for withholding is more stringent than that for asylum. The CAT standard, in turn, is more stringent than that for withholding of removal." (internal citation omitted)). For this reason, and because each argument Wu presses applies equally to each petition, we focus our analysis only on Wu's asylum claim. If Wu cannot establish prima facie eligibility for asylum, his requests for withholding of removal and CAT relief -- with their heightened requirements -- must also fail. We therefore turn now to Wu's claim that the BIA abused its discretion by finding that he failed to establish prima facie eligibility for asylum.

According to Wu, the BIA abused its discretion by ignoring material evidence. Specifically, Wu claims that the BIA ignored assertions in his affidavit that he would continue to practice his faith in China by joining an unregistered church and openly preaching the gospel. The BIA ignored this evidence, Wu

---

[1]  To establish a prima facie case for withholding of removal, the applicant must show that he or she is "more likely than not to face persecution" on a protected ground. Zheng v. Gonzales, 416 F.3d 97, 101 n.3 (1st Cir. 2005). For CAT relief, an applicant must show that it is "more likely than not that [he] would be tortured if removed." Id.; 8 C.F.R. § 208.16.

claims, because it only considered the likelihood that Wu's religious activities in the United States would be discovered, and it failed to consider whether Chinese authorities were likely to persecute Wu if he continued his religious activities in China. To support this claim, Wu points to the BIA's observation that the evidence "does not indicate that Chinese authorities are aware, or are likely to become aware, of his practice of Christianity in the United States." Wu reasons that because the BIA made no similar statement regarding the possible discovery of his practice of Christianity in China, it must have erroneously limited the scope of its analysis. Finally, Wu claims that the BIA's failure to explain why it chose to so restrict its analysis makes the decision inadequately reasoned such that it constitutes an abuse of discretion. See Aponte v. Holder, 683 F.3d 6, 14-15 (1st Cir. 2012) (holding a denial of a motion to reopen based on failure to make out a prima facie case requires an adequate explanation to enable review). We disagree.

To begin, we note that the BIA is not required "to dissect in minute detail every contention that a complaining party advances," Raza, 484 F.3d at 128, or to discuss each piece of evidence proffered, Morales v. I.N.S., 208 F.3d 323, 328 (1st Cir. 2000). The BIA need only fairly consider the petitioner's claims and state its decision "in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence

and the issues and reached a reasoned conclusion." Raza, 484 F.3d at 128. In this case, the BIA complied with these requirements. It accurately described Wu's proffered evidence, which it acknowledged reflected "the longstanding and ongoing problem of repression of religious freedom in China," before noting that such evidence was insufficient to merit relief because it "only describes conditions generally for Christians in China." The BIA thus concluded that Wu failed to establish prima facie eligibility for relief because the evidence did not show a reasonable likelihood that he would be targeted based upon his religion.

Although Wu would have us find that the BIA ignored evidence that he would be persecuted in China, in actuality, the record is devoid of evidence connecting the general reports of the treatment of Christians in China with Wu's own, individualized risk of future persecution. For example, seven of the newspaper articles that Wu submitted described a government crackdown on Shouwang, an unregistered church in Beijing, related to Easter services in 2011. Notably lacking from the record, however, is evidence that Wu desired to attend any unregistered church, let alone Shouwang or a church in Beijing. Additionally, while the reports from both ChinaAid and the U.S. Commission on International Religious Freedom describe the longstanding harassment of Christians in China, they fail to describe conditions that would compel a finding that Wu himself is likely to face harm. The U.S.

Commission on International Religious Freedom report notes that religious persecution in China varies by region and province, and the ChinaAid report documented only a single instance of persecution in Wu's home province of Fuijan. Additionally, the reports also state that the Chinese government has recently granted some latitude to Christian congregations to operate charitable programs and that there have been fewer detentions of Christians in China as of late.

Accordingly, the BIA did not abuse its discretion by denying Wu's motion to reopen. Wu failed to link general reports of ongoing persecution with his own individualized risk of future persecution. See Hang Chen, 675 F.3d at 105 (affirming BIA's denial of relief where evidence showed "some members and leaders of the Christian faith had been arrested or harassed by the Chinese government" but not that petitioner himself risked being so persecuted upon return to China); Barsoum v. Holder, 617 F.3d 73, 80 (1st Cir. 2010) (denying petition for review of denial of reopening where applicant failed to connect "evidence of attacks on other Coptic Christians in Egypt and his own individualized risk of harm" (quotations omitted)); Tawadrous v. Holder, 565 F.3d 35, 39 (1st Cir. 2009) (denying petition for review of BIA decision where petitioner "failed to offer any connection between this secondary evidence of episodic conflict and his own individualized risk of harm" (quotations omitted)).

As the BIA correctly concluded, Wu's proffered evidence failed to establish a reasonable likelihood that he individually would be targeted for harm on account of his religion. Cf. Seng v. Holder, 584 F.3d 13, 19 (1st Cir. 2009) (finding asylum-seeking petitioner's reliance "chiefly on generalized reports of country conditions" was "misplaced"). Thus, Wu did not establish prima facie eligibility for any form of relief, and the BIA acted within its discretion in denying his motion to reopen.

### III. Conclusion

In sum, the record shows that the BIA did not, in fact, fail to consider material, individualized evidence of the likelihood of persecution upon Wu's return to China; rather, Wu failed to present any such evidence. He thus failed to establish prima facie eligibility for asylum, and given the more stringent standards for withholding of removal and CAT relief, those claims must also fail. Under these circumstances, we find that the BIA's review of the evidence, application of the law, and explanation of its decision were adequate. We find no abuse of discretion in the BIA's denial of Wu's motion for failure to establish prima facie eligibility for any form of relief.

The petition for review is denied.

**Denied.**

-10-