# United States Court of Appeals
## For the First Circuit

No. 12-1377

OSCAR ORLANDO ROSALES PEREZ,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.

Randy Olen for petitioner.
Kevin James Conway, with whom Brooke M. Maurer, Trial Attorney, Civil Division, U.S. Department of Justice, Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, and Richard M. Evans, Assistant Director, were on brief, for respondent.

January 15, 2014

---

[*]   Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LYNCH, <u>Chief Judge</u>**.  Oscar  Orlando  Rosales  Perez (Rosales), a Guatemalan teacher who entered this country in 2003, was ordered removed in 2011.  He did not seek judicial review of that order.  Rather, he sought to reopen before the Board of Immigration Appeals (BIA) a few months later based on new evidence. The BIA was unpersuaded.  He now  petitions for judicial review of the BIA's denial of his motion to reopen removal proceedings.  We deny his petition for review, as the BIA did not abuse its considerable discretion in this area.

I.

A.        Original Removal Proceedings

On September 6, 2006, Rosales was charged as removable as an alien in the United States who was not admitted or paroled.  <u>See</u> 8 U.S.C. § 1182(a)(6)(A)(i).  Rosales conceded his removability and applied for withholding of removal, protection under the Convention Against Torture (CAT), and voluntary departure from the United States.  Specifically, Rosales said he sought relief from removal because he feared being the victim of gang violence in Guatemala as a result of his teaching and counseling students to avoid joining gangs.

At a merits hearing before the Immigration Judge (IJ) on February 22, 2010, Rosales testified that he grew up in Guatemala City and had taught 14- to 18-year-old students at the Colegio Pan Americano for about five years, starting in 1998.  Because the IJ

found him credible, we tell his story as he did. At his orientation classes, Rosales said, he told students not to get involved in gangs and to stay away from bad influences, such as alcohol and drugs. Some of his students were in the Maras gang; they tried to "provoke" Rosales during these classes, but he resisted any confrontation.

Rosales testified that about two years after he started teaching, a student who was in the Maras gang failed a computer test that Rosales had given and warned Rosales, "you will see how you're going to die." Rosales reported the incident to the principal, who expelled the student as a result.

Four days later, the student and other Maras members followed Rosales around, insulting him. Later on, about four of the student's friends in the Maras followed Rosales and his brother onto a bus when Rosales was on his way home from work. One of the gang members held a gun to Rosales's head and demanded money, while the other members threatened Rosales and his brother with blades. Rosales gave into their demand for money and later filed a police report. The police did nothing.

Rosales was with his wife the second time that the Maras attacked him, around February 2001, approximately two years after he was robbed on the bus. The same Maras members again sought to rob Rosales and his wife. When Rosales intervened when Maras members pulled at his wife's purse, he was hit with a gun, thrown

to the floor, and stabbed with a knife. The Maras then took all of the couple's belongings. Rosales received six stitches on his hand and fourteen on his leg for his knife wounds. Rosales filed another police report; the police again did nothing.

Rosales was also with his wife during the third attack, which occurred approximately two years after the second attack. Again, the same weapon-bearing Maras members robbed the couple, telling Rosales that they would kill him if he went to the police afterwards. Rosales did not go the police this time.

After the third attack, Rosales was convinced that the gang members knew where he lived because they had called his house asking for money. Fearful of the gang violence, Rosales fled Guatemala on October 22, 2003 and illegally entered the United States through the Texas border on November 5, 2003. His wife later joined him in the United States after she had acquired a visa.

Rosales also testified that his cousin was killed by a gang in August 2005. He said that his cousin was not a teacher and worked for the health ministry in Guatemala. He did not know why his cousin was killed.

Rosales's sister-in-law, Lucy Rosales, also testified. Ms. Rosales is a United States citizen who was visiting Guatemala when gang members robbed Rosales and his brother on a bus. Although she did not witness the attack, she said the experience made

-4-

Rosales scared for his life. She also testified that gang members attacked Rosales because he had advised students to stay away from gangs. All three attacks occurred only after the student was expelled based on a confrontation he had with Rosales after failing a computer test, not directly after the orientation classes.

Rosales claimed that he had been and would be persecuted because of his political opinion and membership in a particular social group: teachers who publicly oppose gang membership. In an oral decision, the IJ denied Rosales's applications for withholding of removal and CAT protection and granted him voluntary departure. The IJ considered Rosales's documentary evidence, including letters from former colleagues at the school where he worked, his declaration, and the joint declaration of his brother and sister-in-law. The IJ articulated four independent grounds for her finding that Rosales had not established a clear probability that his life or freedom would be threatened in Guatemala on account of one of five protected grounds, making him ineligible for withholding of removal. See Arevalo-Giron v. Holder, 667 F.3d 79, 82 (1st Cir. 2012).

The IJ found that: (1) the incidents described by Rosales, taken cumulatively, did not rise to the level of persecution; (2) even if those incidents constituted past persecution, there was insufficient evidence to show that the persecution was on account of a protected ground; (3) the proposed

-5-

social group lacked the requisite "social visibility" for withholding purposes, given insufficient evidence that Guatemalan society identified teachers that spoke out against gangs as belonging to a particular group; and (4) Rosales had not shown it was more likely than not that he would face future persecution in Guatemala on account of a protected ground. The IJ noted that Rosales's parents and two sisters in Guatemala remained unharmed. She also found that Rosales's cousin who was killed was not a teacher, nor did gangs target him because of his relationship to Rosales. The IJ also noted that there was no evidence that the principal who expelled the Maras member had suffered any harm or threats from gangs in the years since. The IJ concluded that Rosales's CAT claim failed because there was no evidence that he feared a government official or any person acting in an official capacity.

Rosales appealed to the BIA. On October 31, 2011, the BIA dismissed Rosales's appeal and reinstated his grant of voluntary departure. The BIA concluded that Rosales had not shown a nexus between his prior harm and a protected ground, reasoning that proof of the gang's criminal extortion did not amount to a showing that the harm was motivated by his political opinion or purported membership in a particular social group.

The BIA found that Rosales's past experiences did not rise to the level of persecution and that his claim of future

persecution on account of his past activities as a teacher was "highly speculative and not supported by the record." The BIA observed that Rosales had "not . . . identified evidence that similarly situated individuals are targeted for persecution in Guatemala on account of a protected ground." (emphasis added). The BIA also agreed that Rosales had no CAT claim, saying he had not shown his past experiences amounted to torture nor had he shown government consent or acquiescence to gang-perpetrated harms.

Rosales did not seek judicial review of the BIA's dismissal.

B.      Motion to Reopen

On December 30, 2011, Rosales moved to reopen removal proceedings on the basis of new evidence he claimed showed the "persecution of teachers and school administrators who publicly oppose gang practices and values by expressly dissuading their students from participating in gangs."

Rosales submitted a copy of an email, not an affidavit, dated December 27, 2011, from Rodrigo Beltran, a math teacher from the Fountain of Life Christian School in Guatemala. The school had closed on September 23, 2010. Beltran said the closing was in response to gang violence and that gang members had used death threats to extort money from him and his immediate boss. He said the gangs had shot at his house, had shot at the school, and had also threatened to kill students. He also said that gang members

had killed Alfredo Osorio, also a teacher at this school, on March 15, 2011, when Osorio was leaving his house.

Rosales also submitted newspaper articles that described the closing of this school due to "extortions from . . . gang members" that demanded payments on a monthly basis, and the U.S. State Department's 2010 Human Rights Report on Guatemala, which Rosales said showed a drastic increase in violence in Guatemala since the IJ's February 2010 decision.

On February 29, 2012, the BIA denied Rosales's motion to reopen, saying that none of the documents that Rosales submitted showed how the Fountain of Life Christian School or its teachers publicly opposed gang practices, nor did they show how the gang threats were related to any such opposition. The gang's criminal extortion of money from schools and teachers did "not amount [to] a showing that a central reason [for that extortion] was their purported membership in a particular social group."

The BIA also rejected Rosales's claim that the 2010 Country Report he submitted showed that gang violence had "drastically escalated" in Guatemala, noting that the report did not indicate substantial changes in gang violence in the year since Rosales's February 2010 hearing. The BIA concluded that the new evidence was "similar to, and cumulative of, evidence already submitted . . . and does not show that a different outcome is

warranted with respect to [Rosales's] claims for withholding of removal or protection under the [CAT]."

## II.

Motions to reopen removal proceedings are disfavored due to the "strong public interest in bringing litigation [in these proceedings] to a close . . . promptly." Jutus v. Holder, 723 F.3d 105, 109 (1st Cir. 2013) (omission in original) (quoting Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003)) (internal quotation marks omitted). As a result, the BIA enjoys considerable latitude in deciding such motions, id., and we review the BIA's denial of a motion to reopen for abuse of discretion, Haizem Liu v. Holder, 727 F.3d 53, 56 (1st Cir. 2013). We uphold the BIA's decision "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Id. (quoting Le Bin Zhu v. Holder, 622 F.3d 87, 91 (1st Cir. 2010)) (internal quotation marks omitted).

An applicant moving to reopen removal proceedings must meet several requirements. First, he must introduce new, material evidence that was not available at the original merits hearing. Second, he must make out a "prima facie case of eligibility for the relief sought." Jutus, 723 F.3d at 110.

Rosales makes two arguments. First he argues that the BIA conflated the standard for making a prima facie case with the standard for the underlying substantive relief when it denied his

motion because the new evidence did "not show that a different outcome is warranted." He also argues the BIA did not consider the original record evidence. He says that the new and old record evidence, considered together, needed to show only a "reasonable likelihood" that he is eligible for the relief he requests in order to make out a prima facie case, not that a different outcome is warranted. Larngar v. Holder, 562 F.3d 71, 78 (1st Cir. 2009) (quoting Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002)) (internal quotation marks omitted).

As to his second argument, it can be quickly disposed of as without merit. The BIA said that it had reviewed the entire record, not just the new evidence. And the logic of its ruling required review of the original record.

As to both arguments, Rosales had to show that his evidence was "new" and that it was "material" before reaching the issue of a prima facie case. See Ratnasingam v. Holder, 556 F.3d 10, 15 (1st Cir. 2009); 8 C.F.R. § 1003.2(c)(1). The problem for Rosales is that the new evidence was not material to the question of the nexus between his treatment and one of five protected grounds. The new evidence said nothing on this issue at all. This was a key gap in his original application, and the new evidence did not even purport to fill that gap.

Evidence is not material unless it has some impact on the outcome of a petitioner's underlying case. See In re Coelho, 20 I.

& N. Dec. 464, 473 (B.I.A. 1992); see also Xiu Xia Zheng v. Holder, 502 F. App'x. 13, 14 (1st Cir. 2013) (per curiam) (saying that new evidence is material for motion to reopen purposes only if it "would likely change the result in the case" (quoting Coelho, 20 I. & N. Dec. at 473) (internal quotation marks omitted)). So, the BIA did not misapply the materiality standard where it evaluated whether the new evidence showed that a "different outcome is warranted" in Rosales's case. Nor did the BIA abuse its discretion in finding the new evidence was not material.

As the BIA explained:

> [T]he evidence submitted at the time of [Rosales's] hearing indicated that criminal violence and extortion affected a wide range of individuals and institutions in Guatemala, not excluding educators. The evidence submitted in [Rosales's] motion [to reopen] is similar to, and cumulative of, evidence already submitted in the respondent's proceedings, and does not show that a different outcome is warranted with respect to his claims for withholding of removal or protection under the [CAT]. Matter of Coelho, 20 I & N Dec. 464 (BIA 1992).[1]

--------

[1] Despite some poorly worded language in the respondent's brief, we do not read the BIA's decision in this case nor in In re Coelho as creating a rule that if new evidence is cumulative of the original record evidence, then it is not material. For example, a petitioner might produce only slim evidence that is insufficient to show a nexus between persecution and membership in a particular social group in removal proceedings. Later, in a motion to reopen, if petitioner submits affidavits from ten individuals establishing they were victims of persecution because of their membership in this same social group, that evidence is cumulative of preexisting record evidence, but it also may nonetheless be material to the nexus requirement. However, that situation is not this case.

(record citations omitted). This finding as to the new evidence was neither irrational nor arbitrary. The BIA correctly observed that all of the new documents describing gang violence toward teachers at a particular school were silent on whether any of those teachers or school administrators publicly opposed gangs. The State Department's 2010 Country Report on Guatemala similarly did not provide evidence addressing whether teachers were targeted because of their public opposition to gang membership. As a result, the new evidence was not material where it did nothing to fill a gap that existed in the original record evidence: proof that persecution was on account of teachers' public teaching and opposition to gangs.

The BIA did not reach the issue of whether Rosales had made a prima facie showing of eligibility for relief. Nor did it need to, given its conclusion that Rosales had not introduced new, material evidence. See Smith v. Holder, 627 F.3d 427, 433 (1st Cir. 2010); Ratnasingam, 556 F.3d at 15 ("Prima facie eligibility for relief is only one of the two threshold requirements for a motion to reopen."). As a result, Rosales's reliance on Smith v. Holder, 627 F.3d at 438, which held that a court should look at all of the record evidence, not just newly submitted evidence, in

evaluating the prima facie case requirement for reopening, is misplaced.[2]

Finally, Rosales requests that we issue an order directing the respondent to state whether it will exercise prosecutorial discretion and allow him to remain. We decline. Rosales could have requested this relief from the government himself at any time. It has been over two years since the Morton Memo[3] has issued, and there is no occasion for this court to make a request which Rosales either has not made himself or which was made and denied. Efforts to prolong these proceedings will not be rewarded.

---

[2] Rosales also criticizes the BIA's earlier decision that Rosales had not established past persecution. However, Rosales never sought judicial review of the BIA's October 31, 2011 decision. Nor did he raise the issue of past persecution in his motion to reopen, which is the only proceeding before us. The time limits for seeking review of BIA orders are "mandatory and jurisdictional." Stone v. INS, 514 U.S. 386, 405 (1995) (quoting Missouri v. Jenkins, 495 U.S. 33, 45 (1990)). Having long ago missed the thirty-day window for seeking review of the BIA's 2011 decision, see 8 U.S.C. § 1252(b)(1), he cannot now attempt to circumvent the statutory requirements for judicial review through the backdoor of his motion to reopen. Lopez v. Holder, 723 F.3d 43, 47 (1st Cir. 2013).

[3] Morton, Dir., U.S. Immigration & Customs Enforcement, Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens (June 17, 2011), available at http://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf.

III.

For the foregoing reasons, the petition for review is denied.