# United States Court of Appeals
## For the First Circuit

No. 13-1312

KUMUDINIE RENUKA PERERA,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Thompson and Kayatta, <u>Circuit Judges</u>.

<u>Visuvanathan Rudrakumaran</u> on brief for petitioner.
<u>Stuart F. Delery</u>, Assistant Attorney General, Civil Division,
<u>Eric W. Marsteller</u>, Senior Litigation Counsel, Office of
Immigration Litigation, and <u>Jane T. Schaffner</u>, Trial Attorney,
Office of Immigration Litigation, Civil Division, on brief for
respondent.

April 22, 2014

**THOMPSON, <u>Circuit Judge</u>.**

**PREFACE**

This is an immigration case involving Kumudinie Renuka Perera, a native and citizen of Sri Lanka. Perera asks us to review an order of the Board of Immigration Appeals ("BIA") denying her second motion to reopen long-closed removal proceedings. We deny her petition, for reasons shortly stated. First, some background.

**HOW THE CASE GOT HERE**

The parties are familiar with the facts — elsewhere recounted, <u>see</u> <u>Perera</u> v. <u>Holder</u>, 471 F. App'x 4 (1st Cir. 2012) — so a simple summary suffices.

Following a hearing that began in 2006 and ended in 2007, an Immigration Judge ("IJ") rejected Perera's claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), finding two things (among others): first, that her rough treatment at the hands of Sri Lankan police officers had been sparked by an intent to extort money from her, not to persecute her for her political beliefs — <u>i.e.</u>, her supposedly supporting a Sri Lankan separatist group called the Liberation Tigers of Tamil Eelam ("LTTE"); and second, that she had not shown that future torture was likely if she were sent back there. So the IJ ordered her removed. The BIA dismissed her appeal in 2008. And we denied her petition for review.

In 2010 — eighteen months after the BIA had dismissed her appeal — Perera moved to reopen her case, alleging changed circumstances in her homeland, e.g., that the police were still looking high and low for her, adamantly insisting that she is an LTTE backer. The BIA denied the motion some eight months later, concluding that her evidence did not show that Sri Lanka had taken a turn for the worse. And we again denied her petition for review.

In 2012 — more than three years after the BIA had affirmed her order of removal — Perera filed another motion to reopen (which is the subject of today's battle), along with a motion to stay removal and a renewed application for asylum and related relief. Again alleging changed country conditions, this time Perera insisted that the Sri Lankan government would persecute her as a failed asylum seeker if returned home — though she copped to the possibility that "this fact existed during the Immigration Court hearing." Emphasizing Sri Lanka's "history of torturing returned asylum seekers," Perera also wrote that her attorney had learned in 2011 that the Sri Lankan consulate in New York requires passport applicants to sign an affidavit stating that they "have not applied [for] or acquired any refugee or asylum status in" the United States. Sri Lankan officials use this affidavit to help single out asylum seekers for persecution (torture or otherwise) — or so she argued. And to support her claims, she submitted a copy

of the affidavit plus other documents describing conditions in Sri Lanka.  Here are some of the other documents' highlights:

- A 2011 article by Freedom from Torture suggested that 26 recently-returned failed asylum seekers might be tortured by Sri Lankan officials, pointing to "the continued arrest and detention of refused asylum seekers on their return" and its "awareness of cases of torture on return."

- A 2011 Amnesty International article expressed the same concern, relying on the country's "history of arresting and detaining rejected Sri Lankan asylum seekers upon their return."

- A 2011 report by the United Nations Committee Against Torture spotlighted "the continued and consistent allegations of widespread use of torture and other cruel, inhuman or degrading treatment" of persons in Sri Lankan police custody.  And the report urged the Sri Lankan government to prosecute those who torture.

- A 2011 Sri Lankan newspaper article touted "an [i]n-depth interview" with a former Sri Lankan judge.  When asked about the "continued and consistent allegations of widespread use of torture" noted by the United Nations Committee Against Torture, the retired judge said, "This has been worrying me from the time I was introduced to the several torture methods used by the military and the police when I heard [terrorism-related cases] in the High Court of Colombo twenty years ago."

- A 2010 report by the Refugee Documentation Centre of Ireland explained that Sri Lankan officials interviewed deportees on their return to Sri Lanka, zeroing in on persons with LTTE ties or who had traveled with false documents.  This has been going on as far back as 2004, the report stressed.

The BIA denied Perera's motion to reopen and denied her motion for stay of removal as moot.  Turning to the affidavit issue, the BIA said that Perera failed to show that this requirement was not in effect at the time of her hearing — meaning

-4-

that the affidavit requirement did not constitute "changed conditions or circumstances." Also, the BIA added, she never showed that a prior overseas asylum application increases the risk of persecution in Sri Lanka. As for the other documents Perera presented, none showed that the complained-of Sri Lankan conditions did not exist at the time of her 2006/2007 hearing, the BIA noted — meaning that this evidence did not constitute "changed conditions or circumstances" either. Actually, rather than showing changed conditions, the BIA found that these documents showed that Sri Lankan officials were continuing to do basically what they had been doing at the time of her 2006/2007 hearing. Cinching this conclusion for the BIA was a 2012 report by the United Kingdom Border Agency, which the BIA administratively noticed. We will later refer to this as the 2012 UK report. Anyway, that report, the BIA wrote, not only supported the finding about continuing problems in Sri Lanka, but it also revealed that the 26 returning failed asylum seekers mentioned above had been "allowed to proceed without incident."

The BIA then rejected Perera's bid to coax a contrary ruling with an unpublished BIA opinion (opinions like that are not binding precedent, the BIA said). And on top of all this, the BIA found that Perera had not shown prima facie eligibility for withholding of removal, asylum, or CAT relief and that no

"exceptional circumstances" justified its exercising its discretion to reopen on its own.

Which brings us to today, with Perera essentially complaining that her proof did show changed country conditions and that she did make out a prima facie case for relief.

**OUR TAKE ON THE CASE**

Motions to reopen are "disfavored" because of the threat they pose to finality. See, e.g., Perez v. Holder, 740 F.3d 57, 61 (1st Cir. 2014). Consequently, the BIA has a fair degree of latitude in deciding whether to grant or deny such motions. Id. And we review the BIA's decision only for abuse of discretion. Id. Basically, that means the BIA's decision will hold unless the challenger "can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way," Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007) — a "highly deferential" standard of review, to be sure, Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir. 2005), though "not [a] toothless" one, Aponte v. Holder, 610 F.3d 1, 4 (1st Cir. 2010).

Ordinarily, a party may file only a single motion to reopen — and she must file it within 90 days of the final administrative decision. See 8 C.F.R. § 1003.2(c)(2). Perera's motion is both number-barred and time-barred. On this, all agree. But an exception to these bars exists if the reopen motion is based on "previously unavailable information showing material changed

circumstances" and the petitioner's proof makes out "'a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief.'" Gasparian v. Holder, 700 F.3d 611, 613 (1st 2012) (citing, among other authorities, 8 C.F.R. § 1003.2(c)(3)(ii), and quoting Le Bin Zhu v. Holder, 622 F.3d 87, 92 (1st Cir. 2010)); see also Perez, 740 F.3d at 62. Perera tries to fit her case within these parameters. That effort fails.

We begin — and ultimately end — with the changed-country-conditions issue. See Perez, 740 F.3d 62-63 (stopping the analysis after upholding the BIA's ruling that the petitioner "had not introduced new, material evidence"). As the BIA supportably concluded, Perera never showed that the affidavit requirement was not in place at the time of her 2006/2007 hearing. Perera complains that the BIA unfairly stuck her with the burden of "prov[ing] a negative." But having filed this "disfavored" motion, she — and no one else — bore the "heavy burden" of proving when the material change occurred. See Ven v. Ashcroft, 386 F.3d 357, 361 (1st Cir. 2004); see also 8 U.S.C. § 1229a(c)(7)(B) (explaining that the moving party's reopen motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material"). Perera also floats the idea that the affidavit requirement infracts "international law." But she never explains how or why this is so. And she cites no authority for her thesis,

-7-

either. So her theory is waived by "perfunctory" treatment. See, e.g., Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010). On the BIA's handling of the affidavit requirement, then, we see no abused discretion.

Nor do we see any abused discretion in the BIA's handling of the other documents. Recall how Perera herself conceded below that the Sri Lankan government has a "history of torturing returned asylum seekers" and that this "fact" may have "existed during the Immigration Court hearing." Well, we are not surprised that she did — after all, some of the very documents she trumpets contain statements stressing things like how the country has a "history of arresting and detaining rejected Sri Lankan asylum seekers" and how there are "continued and consistent allegations of widespread use of torture." (Emphasis added.) Looking for a way out of this predicament, Perera says that the documents themselves were not available before the 2006/2007 hearing. Ergo, the argument continues, her reopen bid was bottomed on evidence that showed a new and material adverse change in country conditions. The big problem for her, however, is that she has not shown why other evidence of Sri Lanka's "history of torturing returned asylum seekers" — again, words lifted from her reopen motion — was "unavailable and undiscoverable" at the time of her removal proceedings. See Le Bin Zhu, 622 F.3d at 92 (citing 8 C.F.R. § 1003.2(c)(1), which provides that "[a] motion to reopen

-8-

proceedings shall not be granted unless . . . [the] evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing"). Clinching matters, some of her documents show that her complained-of threat of torture is, sadly, an old condition that has continued, which also makes her reopen motion a nonstarter. See Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009) (explaining how material, previously-unavailable evidence must show "the intensification or deterioration of country conditions, not their mere continuation"); see also generally Fernando v. U.S. Att'y Gen., 2014 WL 464228, at *1-2 (11th Cir. Feb. 6, 2014) (unpublished) (concluding that certain documents — including some of the ones Perera relies on here — "supported the BIA's conclusion that conditions in Sri Lanka had not changed but, rather, the Sri Lankan government was continuing a practice that existed when [petitioner] filed his initial application" and thus doomed his reopen motion).[1]

As a fallback, Perera blasts the BIA for not following the unpublished BIA opinion — applying Third Circuit law — that she had unearthed. But, as the BIA rightly noted, unpublished opinions like that have "no precedential force." Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005). So that argument goes nowhere.

Perera also criticizes the BIA for administratively noticing the 2012 UK report, adding, too, that the BIA never gave

---

[1] Perera's lawyer also represented the Fernando petitioner.

her a chance to weigh in on that document, which, she protests, violated her due-process rights. Importantly, the BIA can take "administrative notice of commonly known facts such as current events or the contents of official documents." 8 C.F.R. § 1003.1(d)(3)(iv). True, Perera insists that 2012 UK report does not discuss commonly-known facts. But — and it is an important "but" — she nowhere contends that the report does not constitute an official document. Applying abuse-of-discretion review, see Yang Zhao-Cheng v. Holder, 721 F.3d 25, 28 (1st Cir. 2013); see also Rivera-Cruz v. I.N.S., 948 F.2d 962, 966 (5th Cir. 1991), we find no error.

Also, a winning due-process claim requires (among other things) a showing of prejudice, i.e., a showing that the defect likely affected the proceeding's outcome. See, e.g., Amouri v. Holder, 572 F.3d 29, 36 (1st Cir. 2009). On de novo review, see id. at 35-36, we see that Perera makes no effort at all to satisfy this standard — she does not say what bones she would pick with the report, for example. And we doubt that she could in any event, since it is clear that only after finding no proof of changed conditions did the BIA mention the 2012 UK report, and then simply to say that the report was "consistent with" its conclusions. See generally Fernando, 2014 WL 464228, at *3 (reaching the same result in dealing with the same report).

The bottom line, then, is that BIA did not reversibly err in concluding that Perera's second reopen motion was barred by her failure to show a material adverse change in country conditions. And that is that.

### FINAL WORDS

Our work over, we <u>deny</u> Perera's petition for judicial review.