# United States Court of Appeals
## For the First Circuit

No. 13-2076

YONG XIU LIN,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Jeffrey E. Baron and Baron & Shelkin, P.C. on brief, for petitioner.
Carmel A. Morgan, Trial Attorney, Office of Immigration Litigation, Civil Division, Stuart F. Delery, Assistant Attorney General, and Shelley R. Goad, Assistant Director, on brief, for respondent.

May 14, 2014

**LYNCH, Chief Judge**.  Petitioner Yong Xiu Lin ("Xiu Lin"), a native and citizen of China, seeks review of the Board of Immigration Appeals' (BIA) denial of her second motion to reopen removal proceedings based on changed country circumstances.  That motion was filed more than seven years after the denial of Xiu Lin's first untimely motion to reopen and almost twelve years after she was first ordered removed to China.  The BIA did not abuse its discretion in concluding that Xiu Lin's second motion to reopen is both untimely and number-barred under 8 C.F.R. § 1003.2(c)(2) and not subject to any exceptions thereto.  We deny the petition for review.

I.

A.      <u>Prior Proceedings</u>

Xiu Lin came to the United States on or about June 7, 2000, arriving at Chicago O'Hare International Airport without a visa or other valid entry document.  Xiu Lin was detained, and the Immigration and Naturalization Service issued her a Notice to Appear on June 23, 2000, charging her as removable for having entered the United States through fraud or willful misrepresentation of a material fact, 8 U.S.C. § 1182(a)(6)(C)(i), and without a valid entry document, <u>id.</u> § 1182(a)(7)(A)(i)(I).  On July 6, 2000, Xiu Lin was released from custody to go live with her husband's aunt in New York, New York.

On September 5, 2000, Xiu Lin applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), saying that she opposed China's population control policy and would be forced to undergo involuntary sterilization if she were returned to China. Specifically, she said she was fined for getting married at nineteen, when she was younger than the legal marriage age in China, in December 1994. She also said she was forced to undergo insertion of an intrauterine device (IUD) three months after her son was born in China on October 6, 1995. The IUD, however, "dropped out on its own" and, unbeknownst to her, she became pregnant a second time in 1998. When she went to a doctor's appointment, she was forced to undergo an abortion in March 1998. Xiu Lin's application also said that Chinese officials had damaged her home.

An Immigration Judge (IJ) conducted a hearing on Xiu Lin's application in New York on September 10, 2001, at which both Xiu Lin and her husband, Xin Ren Chen (Ren Chen),[1] testified. Xiu Lin testified that five or six local Chinese authorities had used hammers to smash several windows and doors on the first floor of her house some time in July 1996 because she had not paid the government a fine for getting married and having a child too early.

---

[1] At the hearing, Xiu Lin testified that her husband left China in 1998 and had never appeared before an IJ. Ren Chen said that he had not applied for asylum and that if his wife were to return to China he would stay in the United States.

-3-

She said that her husband was not home when the officials came, although her husband later testified that he was there when the local authorities damaged their house. Her husband also testified that the damage occurred in January, not July, of 1996. Both Xiu Lin and Ren Chen agreed, however, that they paid the fine on July 11, 1996.

Xiu Lin also said she had black-and-white photos, which Ren Chen had taken a few days after the damage occurred as proof. The IJ noted that the photos were in color, not black and white, and that they showed damage to the second floor although Xiu Lin had said it was only to the first floor. Xiu Lin also testified that her house in China was across the street from buildings, whereas her husband had said they lived across from a vacant lot.

As to the forced abortion, Xiu Lin said that on March 15, 1998, a doctor discovered she was pregnant at a routine exam to check her IUD. She was then taken to ChangLe County City Hospital, where she received an injection at her waist right before a new IUD was placed in her. When asked about the abortion procedure, she said only that she delivered the fetus in the bathroom a few hours later. When asked about how she was able to deliver the fetus when a new IUD device had already been inserted, Xiu Lin changed her testimony and said the IUD device was inserted several days after the abortion. She believes she was two months' pregnant at the time.

Xiu Lin also testified that she had called her husband the day of the abortion to tell him what had happened. She said he was waiting for her with their son at her mother's house when she returned that afternoon. Ren Chen, in contrast, said that Xiu Lin did not call him until the night of the abortion to tell him what had happened. He said he did not see her until the day after the abortion and that they met at their own home, not Xiu Lin's mother's house.

Xiu Lin said that she gave birth to a daughter on August 12, 2001, in Boston, Massachusetts, where her parents live as lawful permanent residents.

On September 10, 2001, the IJ found that Xiu Lin was not credible. In an oral opinion, the IJ first noted that Xiu Lin's testimony was very "general and meager" and lacked detail on important aspects of her asylum claim. The IJ doubted that the forced abortion actually occurred, as Xiu Lin was not able to describe the procedure and knew very few specifics about the actual operation. The IJ also went through the numerous inconsistencies between Xiu Lin and Ren Chen's testimony regarding both the damage to their home and the details about what happened the day of Xiu Lin's forced abortion. When given the opportunity to explain the major contradictions, Xiu Lin had said only that she had a tough night and had given the wrong answer.

The IJ also doubted the authenticity of the documents from China in Xiu Lin's application. In particular, he did not believe that the photos of a damaged house depicted Xiu Lin's home in China. He also questioned the authenticity of an "abortion certificate," which Xiu Lin said was proof of the forced abortion. The IJ explained that State Department reports said Chinese hospitals issued certificates to patients that requested them in order to get sick leave after voluntary abortions but that the certificates were not typically issued after forced abortions.

After considering the record evidence and finding Xiu Lin not credible, the IJ denied Xiu Lin's request for asylum, withholding of removal, and CAT relief and ordered her removed to China.[2]

On February 19, 2002, Xiu Lin requested that the BIA order another merits hearing because part of the hearing was not transcribed. On August 22, 2002, the BIA noted that one of the tape recordings of the hearing was blank and remanded the case to the Immigration Court with instructions that it take "necessary and appropriate" steps to prepare a complete transcript of the proceedings, including a new hearing if necessary. On September 16, 2002, the IJ changed the venue of the proceedings to Boston,

---

[2] Xiu Lin had conceded that she was removable for having entered without a valid entry document under 8 U.S.C. § 1182(a)(7)(A)(i)(I). The IJ found there was insufficient evidence to support the additional fraud charge against Xiu Lin.

-6-

Massachusetts because Xiu Lin had moved from New York City to Malden, Massachusetts in July 2002.

On September 30, 2003, the parties convened before a new IJ in Boston. They stipulated that the facts stated in the original oral decision accurately reflected what was said during the merits hearing, so there was no concern that the oral decision was inconsistent with the contents of the blank tape. As a result, the IJ determined that another merits hearing was not necessary and re-issued the original decision denying Xiu Lin's application for relief from removal. Xiu Lin appealed to the BIA, and on February 1, 2005, the BIA affirmed the IJ's decision, including the adverse credibility finding, and dismissed the appeal. This court denied Xiu Lin's petition for review on November 23, 2005, stating that the IJ's findings that Xiu Lin was not credible and had presented suspect documentary evidence were amply supported by the record. Yuan[3] v. Gonzales, 155 F. App'x 7 (1st Cir. 2005).

On March 20, 2006, Xiu Lin filed her first motion to reopen the removal proceedings, stating that her father had become a U.S. citizen and had filed an immigrant visa petition on her behalf. On May 16, 2006, the BIA denied Xiu Lin's motion as untimely because it was not filed within ninety days of the BIA's

_____

[3] The full caption refers to the petitioner as "Xiu Li Yuan a/k/a Yong Xiu Lin."

February 1, 2005 decision dismissing her appeal.  See 8 C.F.R. § 1003.2(c)(2).  That decision is not before us.

B.        Second Motion to Reopen

On May 24, 2013, more than seven years after her first untimely motion, Xiu Lin moved the BIA to reopen a second time. She argued there was new material evidence not available during her 2001 removal proceedings showing that China currently enforces its one-child policy using "force and extreme coercion tantamount to force."  She said this ramped-up, coercive enforcement made it probable that she would be subjected to sterilization in China because she has three children in violation of the one-child policy: a son born in China in 1995, and two daughters born in Boston in 2001 and 2005.  As a result, she asked the BIA either to exercise its discretion to sua sponte reopen proceedings, 8 C.F.R. § 1003.2(a), or to find her excused from complying with the number and time limits on motions to reopen based on a showing of changed circumstances in China, see id. § 1003.2(c)(3)(ii).

As evidence, Xiu Lin submitted an unsigned and unsworn letter from the Family Planning Office in her hometown of ChangLe City, Fujian Province, which was allegedly sent to Xiu Lin's sister in China.  The letter said Xiu Lin would be sterilized if she returned to China with her American-born children.  She also submitted letters from two women who said they were sterilized when they returned to China after giving birth to children abroad.  Xiu

-8-

Lin's evidence also included an Amnesty International report and news articles documenting the mass sterilization of people in Puning County, Guangdong Province, China in April and September 2010 to meet local birth control quotas. These reports did not address changes to enforcement of the one-child policy in Fujian Province, where Xiu Lin is from.

The BIA denied Xiu Lin's motion to reopen in a detailed decision on July 31, 2013. The BIA found that Xiu Lin had not shown that the unauthenticated documents from China were genuine or reliable. Relatedly, the BIA found there was insufficient evidence that Xiu Lin would likely suffer mistreatment or economic harm amounting to persecution based on the birth of her son in China and two American-born daughters. Finally, the BIA concluded Xiu Lin's evidence was insufficient to establish a material change in country conditions so as to exempt her second motion from the requirements that she file only one motion to reopen within ninety days of the BIA's 2005 final decision in her removal proceedings. It also declined to sua sponte reopen her proceedings.

## II.

Motions to reopen are disfavored given the public interest in the prompt conclusion of removal proceedings. Perez v. Holder, 740 F.3d 57, 61 (1st Cir. 2014). As a result, the BIA has considerable latitude in deciding those motions. See Perera v. Holder, ___ F.3d ___, 2014 WL 1613670, at *3 (1st Cir. Apr. 22,

2014).  We review the BIA's decision under the "highly deferential" abuse of discretion standard.  Id. (quoting Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir. 2005)).  We uphold the BIA's decision "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way."  Perez, 740 F.3d at 61-62 (quoting Liu v. Holder, 727 F.3d 53, 56 (1st Cir. 2013)).

It is undisputed that Xiu Lin's second motion to reopen is both number-barred and untimely.  8 C.F.R. § 1003.2(c)(2). "[A]n exception to these bars exists if the . . . motion is based on 'previously unavailable information showing material changed circumstances' and the petitioner's proof makes out 'a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief.'"  Perera, 2014 WL 1613670, at *3 (quoting Gasparian v. Holder, 700 F.3d 611, 613 (1st Cir. 2012)).  Xiu Lin challenges several aspects of the BIA's determination that she has not met the "heavy burden" of proving materially changed circumstances.  Zhu v. Holder, 622 F.3d 87, 92 (1st Cir. 2010).

She first argues that the BIA did not address her argument that the use of coercive methods to force sterilizations in Puning County, Guangdong Province, in 2010 showed "there is no longer a national prohibition [on] the use of force in family planning matters in China" and so demonstrated changed

-10-

circumstances.  The argument lacks merit, as the BIA addressed and rejected Xiu Lin's argument, saying:

> Her claim that there have been reports of some incidents of coercion to meet birth targets in some areas of China, contrary to the national policy, is not sufficient to establish that she will likely suffer mistreatment amounting to persecution based on the birth of her first child in China and two other children in the United States.

The fact that the BIA addressed Xiu Lin's broader claim of coerced sterilizations occurring "in some areas of China," rather than a subset of that argument based on specific events in Puning County, does not matter.  We have said that the BIA "is not required to dissect in minute detail every contention that a complaining party advances."  Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2007).  Nor need the BIA discuss each piece of evidence proffered, Wu v. Holder, 737 F.3d 829, 833 (1st Cir. 2013), although the BIA here explicitly acknowledged the media reports that Xiu Lin had submitted as evidence.

Xiu Lin's evidence as to forced sterilizations in Puning County showed only isolated crackdowns of enforcement of China's one-child policy in a single county of China, located in Guangdong Province, not Xiu Lin's native Fujian Province.  Xiu Lin does not suggest that she would be required to live in Guangdong Province.  Rather, she argues that evidence as to coercive sterilizations in Puning County, Guangdong Province is material because both Puning and her native county are rural areas and so likely to have similar

-11-

enforcement policies. However, Xiu Lin points to no evidence that enforcement practices are the same across different rural counties and provinces in China. See Wu, 737 F.3d at 834 (explaining petitioner's burden to "link general reports of ongoing persecution with his own individualized risk of future persecution"). If anything, the evidence in support of Xiu Lin's motion undermines her argument, as it emphasizes the extent to which local rules implementing China's population control policy vary across provinces.

Under these circumstances, the BIA did not abuse its discretion in concluding that Xiu Lin's evidence as to coercion in "some areas of China" was insufficient to establish either a likelihood of persecution or materially changed circumstances. See Smith v. Holder, 627 F.3d 427, 434 (1st Cir. 2010); see also Li v. Att'y Gen. of U.S., 443 F. App'x 721, 723-24 (3d Cir. 2011) (per curiam) (finding no abuse of discretion in BIA's conclusion that evidence of coercive sterilizations in Puning County, Guangdong Province were not material to a showing of changed conditions in petitioner's native Fujian Province (citing Yuan v. Att'y Gen. of U.S., 642 F.3d 420, 426 (3d Cir. 2011))).

Xiu Lin next attacks the BIA's conclusion that she did not "sufficiently authenticate[]" documents from China and so has failed to show they are of "sufficient evidentiary worth to support reopening these proceedings." None of the documents were

authenticated pursuant to the procedure set forth in 8 C.F.R. § 1287.6(b). While we have previously held that this regulation "'offers only a method--not the exclusive method--for authenticating a record in an asylum case,' and that noncompliance with § 1287.6 'is not an absolute bar to the admissibility of a foreign document in an asylum hearing,'" Zheng v. Holder, 502 F. App'x 13, 16 (1st Cir. 2013) (quoting Jiang v. Gonzales, 474 F.3d 25, 29 (1st Cir. 2007)), Xiu Lin has made no attempt to employ any alternative avenue of authentication. Her failure to do so looms large due to the IJ's earlier finding that she had submitted false documents in her original application, including a fake "abortion certificate" purportedly issued by a Chinese hospital.

Relatedly, Xiu Lin's criticism of the BIA's consideration of her "previous lack of candor" is frivolous. The IJ had found not only that her testimony at the original merits hearing was unbelievable but also that some of the documents she had submitted were false. We have repeatedly said that credibility findings can inform the evidentiary weight the BIA ascribes to unauthenticated documents in a later, related proceeding, as they did in this case. Zhu, 622 F.3d at 92 (saying adverse credibility finding supports BIA's decision to accord limited evidentiary value to unauthenticated document); Tsai v. Holder, 505 F. App'x 4, 8 (1st Cir. 2013) (same).

As to the unsworn and unsigned document purporting to be from the "ChangLe City HangCheng Street Family Planning Office," Xiu Lin claims that she sufficiently authenticated it through a letter from her sister in China. Not so. Especially given the prior finding that Xiu Lin was not credible, the BIA was within its discretion to conclude that "[t]he unsworn statement of [Lin's sister] . . . appears to be created for the purpose of litigation, and is from an interested witness not subject to cross-examination." See Zheng v. Mukasey, 546 F.3d 70, 72 (1st Cir. 2008) (finding, where IJ had previously determined the petitioner was not credible, that "[a]bsent substantiation, self serving affidavits from petitioner and her immediate family are of limited evidentiary value"). Nor was the BIA required to accept the ChangLe Family Planning Office seal on the document as adequate proof of its authenticity. See Zheng v. Holder, 502 F. App'x 13, 16 (1st Cir. 2013) (per curiam) (holding BIA did not abuse discretion in according less weight to document purporting to be from a Village Committee of a Chinese province where there was no evidence that seal on document was genuine).

Xiu Lin also complains that the BIA erred in discounting the relevance of documents taken from other people's asylum applications, which include letters from two women who said they were forced to undergo sterilizations in Fujian Province after having children abroad. The BIA said the women were not similarly

situated to Xiu Lin. Neither of the women had been sterilized after returning to China with children born in the United States. See Chen v. Holder, No. 12-1883, 2013 WL 7083273, at *2 (1st Cir. June 28, 2013) (concluding that "declarants simply were not similarly situated" to petitioner under similar circumstances). The women's statements were unsworn, and their "sterilization certifications" were unauthenticated. See Chen v. Holder, 675 F.3d 100, 106-07 (1st Cir. 2012) (holding that BIA had discretion to discount evidentiary value of comparable documents that were unauthenticated). In addition, the two women claimed to have undergone abortions in July 2004 and August 2008, times during which we have noted that family planning enforcement efforts in Fujian Province were "lax" and "uneven." See, e.g., Zheng, 546 F.3d at 73 (quoting In re J-W-S, 24 I. & N. Dec. 185, 193 (B.I.A. 2007)). For all these reasons, the BIA did not abuse its discretion in finding this anecdotal evidence was insufficient to support reopening Xiu Lin's removal proceedings.

Finally, Xiu Lin argues the BIA erred in concluding that she has not shown economic harm amounting to persecution. "[E]conomic disadvantage must be severe and deliberate to rise to the level of persecution." Wu v. Holder, 741 F.3d 211, 215 (1st Cir. 2013). Xiu Lin asserts she has proven she will suffer a ruinous fine amounting to economic persecution if she returns to China. However, she points only to a 2010 Human Rights Report on

China, which says that fees for having unapproved children "<u>can</u> reach 10 times a person's annual disposable income." (emphasis added).  Xiu Lin's other evidence says only that fines are imposed on violators of the one-child policy but does not address the severity of those fines.  The BIA was neither arbitrary nor irrational in concluding this evidence was inadequate to demonstrate economic persecution.[4]

### III.

For the reasons stated, the petition for review is <u>denied</u>.

---

[4]  As a result, we need not address Xiu Lin's other argument as to this economic persecution claim.